[No. 4554.]

## JAMES W. MOYLE v. OWEN CONNOLLY.

50 295
d134 285

50 295
138 398

DIVISION LINE BETWEEN ADJOINING LAND-OWNERS.—If parties owning adjoining tracts of land agree that a fence shall be erected upon a certain line, and that the same shall be the dividing line between their respective tracts, and the agreement is executed, it establishes the partition line, and they are estopped from afterwards contesting it.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

Ejectment to recover a belt of land lying on the boundary-line between fifty-vara lots Nos. 4 and 5, and fractional fifty-vara lots Nos. 2 and 3, in the city of San Francisco. In 1863, William V. Wells owned said fractional fifty-vara lots, and the defendant Connolly owned lots 4 and 5. Said Wells and the defendant then entered into an agreement in writing, from which the following extract constitutes the substance:

"This indenture witnesseth, that for and in consideration of the sum of one hundred dollars ($100), the receipt whereof, in gold coin, is hereby acknowledged, the said Owen Connolly, for himself and wife, agrees to allow the said Wells to establish and erect a partition fence between their respective property; the said fence to commence at a post on the land now occupied by said Connolly to be set on a line northerly from the last post on the lower part of the fence of the said Wells on Market street, five feet northward from the southern side of the old division fence now standing. That post to be the point of commencement, and the fence to be run in a direct line to the westward, to strike the corner post of the fence on Laguna street, now established by the said Wells."

The agreement was executed by building the fence, and Connolly entered into the possession of the land on his side of the fence. On the 7th day of June, 1864, Moyle sold lots 2 and 3 to the plaintiff, and gave him a conveyance, which was recorded the next day. The agreement between Moyle and Connolly was not recorded until June, 1867. This ac-

tion was commenced on the 12th day of April, 1867, and the belt of land sought to be recovered was a portion of lots 2 and 3, lying on Connolly's side of the division fence. It did not appear that the plaintiff when he bought had any notice of the agreement, except the existence of the fence and Connolly's possession. The court below rendered judgment for the plaintiff, and the defendant appealed.

*William Irvine,* for the Appellant.

As owners of adjoining lots it is competent for the parties to agree upon a line between them, and such agreement, when fully executed, precludes not only the parties to it, but all persons claiming under them, from disputing it. (*Lindsay* v. *Springer,* 4 Harr. Del. R. 547; *Sawyer* v. *Fellows,* 6 N. H. R. 107; *Eaton* v. *Rice,* 8 Id. 378; *Prescott* v. *Hawkins,* 12 Id. 26; *Enfield* v. *Day,* 7 Id. 467; *Clough* v. *Bowman,* 15 Id. 511; *Carleton* v. *Redington,* 21 Id. 301; *Orr* v. *Hadley,* 36 Id. 579; *Berry* v. *Garland,* 26 Id. 481; *Dudley* v. *Elkins,* 39 Id. 78–84; *Whitehouse* v. *Bickford,* 29 Id. 471–478; *Sneed* v. *Osborn,* 25 Cal. 619–630.)

It is objected by counsel for plaintiff that the agreement does not import a grant, and that it was not recorded until after the plaintiff's purchase; and that the description in his deed carries him to the fifty-vara lot line of division, and that he was a purchaser without notice of the agreement. The answer to all which is, that it is not a question whether such an agreement passes title, but only whether it establishes and fixes a line of division between adjoining owners.

In *Kip* v. *Norton* (12 Wend. R. 127), Chief Justice Savage, delivering the opinion of the court, says: "There can be no doubt that an express (parol) agreement to settle a disputed or unsettled line is valid if executed immediately, and possession accompanies and follows such agreement."

So an award establishing a line between adjoining owners is binding, although the submission be by parol. (*Clark* v. *Burt,* 4 Cush. R. 396; *Russell* v. *Allard,* 18 N. H. R. 222–226.)

*Crane & Boyd,* for the Respondent.

Let us examine the agreement. Wells pays Connolly $100, in consideration of which the latter allows him "to establish and erect a partition fence between their respective property." What property? Why, the properties respectively owned by them, and to which they had title; that is to say, fifty-vara lots two and three on the one side, and four and five on the other.

It is then provided that this fence is to "commence at a post on the land now occupied by said Connolly, to be set on a line northerly from the last post on the lower part of the fence of the said Wells, on Market street, five feet northward from the southern side of the old division fence now standing, * * * and the fence to run in a direct line to the westward."

Under these circumstances, the appellant Connolly cannot now claim any protection from the agreement, and as he had not had five years' adverse possession when this suit was commenced (April 12, 1867), we are entitled to recover according to our title.

But we claim we are entitled to recover, notwithstanding the agreement.

This agreement does not purport to convey any interest in the land, and it is evident that it was not intended to do so; it has no words in it which, upon the most latitudinarian construction, can be held to operate as a transfer of the fee, or even of the possession of the land.

It simply provides that Wells may erect a fence, but whether to continue for one year or twenty, does not appear; it does not in any manner convey or agree to convey any of the land north of the proposed fence, to Connolly. Wells pays Connolly for the privilege of moving the fence to the north, and that is all. It was a mode of buying off a trespasser.

By the COURT:

We are of opinion that the written agreement made by

Wells and Connolly on the second day of April, 1863, established the line between the parties here.

Judgment and order denying a new trial reversed, and cause remanded for a new trial.