[No. 9921.  Department One. — April 26, 1888.]

# EDWARD WHITE, RESPONDENT, v. CLAUS SPRECK-ELS, APPELLANT.

BOUNDARY — ESTABLISHMENT OF BY AGREEMENT. — Where coterminous proprietors of land in good faith agree upon, fix, and establish a boundary line between their respective tracts, in which they acquiesce, and under which they occupy for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them, and those holding under them, or either of them.

ID. — EFFECT OF AGREEMENT — HOW OPERATES ON TITLE. — Such agreements are not within the statute of frauds, because they are not considered as extending to the title. They do not operate as conveyances so as to pass title from one to the other, but proceed upon the theory that the true line of separation is in dispute, and to some extent unknown, and in such case the agreement serves to fix the line to which the title of each extends.

ID. — LOCATION OF BOUNDARY. — What are boundaries is a matter of law; but where they are is a matter of fact.

ID. — ERECTION OF DIVISION FENCE. — A division fence erected by one of the coterminous proprietors in such a manner as to include part of the land of the other will not be considered as the established boundary line, unless the site of the fence was fixed and agreed upon by the respective owners of the adjoining lands as their boundary line.

ID. — FINDING. — The finding as to the situation of the boundary line in question, held, supported by the evidence.

APPEAL from a judgment of the Superior Court of Santa Cruz County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Jarboe, Harrison & Goodfellow,* for Appellant.

The fence was built by the defendant under an agreement between himself and the owner of the contiguous ranch, for the purpose of marking the boundary between them. This action of the owners of the ranchos is such a mutual declaration by them to each other of what is the true line, and such an establishment thereof by them, that neither they nor their grantees can afterwards dispute such declarations. (Civ. Code, sec. 1007; *Sneed* v.

*Osborn*, 25 Cal. 626; *Columbet* v. *Pacheco*, 48 Cal. 395; *Moyle* v. *Connolly*, 50 Cal. 295; *Biggins* v. *Champlin*, 59 Cal. 113; *Hastings* v. *Stark*, 36 Cal. 122; *Johnson* v. *Brown*, 63 Cal. 393; *Cooper* v. *Vierra*, 59 Cal. 282.)

*Julius Lee*, and *Stephen M. White*, for Respondent.

SEARLS, C. J.—This is an action of ejectment to recover a strip of land about two and one eighth miles in length, and of about one hundred feet in width, as well as a certain other piece of land containing about four acres.

Plaintiff had judgment for restitution and for $86.62, the value of the use and occupation of the premises, and for costs. Defendant appeals from the judgment, and from an order denying a new trial.

Plaintiff is the owner of the Calabasas rancho, and defendant is the owner of the Aptos rancho, which lies west of and adjoins the former.

The question involved relates to the division line between the two ranches.

It seems that in 1875, William H. Patterson, who then owned the Calabasas rancho, and defendant built a division fence, which plaintiff contends wrongfully included the strip of land in question

At the trial plaintiff introduced in evidence a patent from the United States to the heirs of Filipe Hernandez for the tract of land known as the Calabasas rancho, bearing date December 8, A. D. 1868; and it was then stipulated in open court that on the third day of December, A. D. 1872, William H. Patterson had become vested with the title to all of the land embraced in said patent.

The plaintiff then offered in evidence a deed of conveyance of the land described in said patent from William H. Patterson to A. B. Patrick, bearing date August 8, A. D. 1879, and a deed thereof from A. B. Patrick to the plaintiff, bearing date November 1, 1882.

It is also shown that the said Calabasas rancho has for

its western boundary the eastern boundary of the Aptos rancho, and for its southern boundary the northern boundary of the San Andreas rancho. Accompanying the patent aforesaid, and as a part thereof, is a map of said Calabasas rancho, of which a copy is set out in the transcript.

Plaintiff then called as a witness J. J. Lewis, who testified as follows:—

"I am a surveyer by profession and occuption. About a year ago I examined the premises and made a map of the Calabasas rancho, including the premises in controversy. I had before me at the time, and copied, the map of said rancho, which is a part of the patent just given in evidence."

This map made by the witness was then put in evidence by the plaintiff, and marked "Plaintiff's Exhibit 3," and is set out in the transcript. The witness then testified further as follows:—

"I found a fence at the westerly portion of said rancho, indicated on said map by the dotted black line. The westerly line of the rancho is indicated on the map by the solid black line. I found the southerly end of said fence by running south 62° west, 7.13 chains from post marked S. A. No. 2. Said post S. A. No. 2 was a surveyor's post, that is, a large, square redwood post, firmly set in the ground, with surveyor's marks upon it. It had apparently been there a long time,—five, ten, or more years. I also found a fence running across the corner of the Calabasas ranch from said post S. A. No. 2, as indicated in said map. This fence cut off, in a triangular shape, about 2.6 acres, upon which was a large, valuable spring of water.

"The plaintiff showed me this post, and pointed it out as a corner of the Calabasas ranch."

Defendant's counsel objected to this statement of what the plaintiff had said or pointed out to the witness

as incompetent, irrelevant, and immaterial, and asked to have the same stricken from the record.

The court overruled the objection and denied the motion, to which ruling the defendant then and there excepted.

This ruling is assigned as error.

Post S. A. No. 2 is delineated and its position given upon the map, which is a part of the patent, and its position, whether in existence or not, is capable of being determined by actual survey.

The witness found the post upon the ground marked as in the map specified. The fact that the plaintiff showed him the post, and pointed it out as a corner of the Calabasas ranch, did not militate against it as a physical fact; and the further fact that plaintiff said that it was a corner, etc., was only in corroboration of what was shown by the map accompanying the patent already in evidence.

There was also evidence tending to show that post S. A. No. 2 has stood in its present position for at least ten years.

The post in question is not upon the disputed line between plaintiff and defendant, which is designated by posts 3 and 4, but, as it turned out later from the testimony of another witness, is a stake on the line dividing plaintiff's ranch from the San Andreas ranch, which lies south of it.

The true position of stake No. 2 is fixed by the testimony of Thomas W. Wright, the county surveyor, who explains how he took the calls from the map, and measured the distance from the government section corner, and found the stake S. A. No. 3, etc. It is true, Lewis found the same stake by measuring from state No. 2, just as he should have done if the latter was in its correct position, but whether it was so or not was not an established fact, except as shown by the result, coupled with the testimony of other witnesses. All of these facts

appeared from his cross-examination, and formed a basis upon which a motion to strike out his testimony might have been properly based; but as these facts were not patent when the objection to his testimony was made, there was no error in the ruling of the court.

Defendant holds under a patent for the Aptos rancho, from the United States to Rafael Castro, dated April 3, 1860, by virtue of a deed from said Castro, dated July 6, 1872. The Aptos ranch lies west of and is bounded on the east by the Calabasas rancho, as before stated.

The next contention of appellant is, that the evidence was insufficient to show that the land sued for was any part of the Calabasas ranch.

The evidence tending to support the finding of the court is:—

1. That there was a line of stakes, say twenty in all, along what plaintiff claims to be the true line of demarcation of the two ranches, which are shown to be some eighty feet west of and parallel with an old fence.

2. That when Spreckels and Patterson were about to have a line fence constructed between them, Parker, who was about to build it, applied to Spreckels about making the fence, and the latter "pointed up the valley, and said I would find the surveyor's stakes up the valley, a little this side of an old fence" that was there at that time.

This old fence, the witness says, "was about eighty feet east of the survey line that Spreckels pointed me to"; that subsequently Spreckels objected to the new fence being placed on the line of stakes, and that it was built upon the line of the old fence, and about eighty feet from the line of stakes.

3. The witness J. J. Lewis shows by diagram "Exhibit No. 3," which he says is a copy of the map found in the patent under which plaintiff holds, the western boundary of the ranch of plaintiff, and that the fence is east of such boundary, and runs substantially parallel therewith, being 1.23 chains east therefrom at the south

end, and 1.37 chains east from such western boundary at the north end.

4. The testimony of Thomas W. Wright, the county surveyor, is to the effect that he ran the line of the Calabasas ranch twice, as far as the county road, once for Castro and once for defendant. He says it is a section line. He says he took the calls from the map, and set the stake No. 3 for the southwest corner.

A reference to the map shows stake No. 3 to be at the southwest corner and upon the west line as claimed by plaintiff, and upon the section line.

The strip of land between this west line and the fence constitutes one of the subjects of the controversy. There was no evidence whatever to contradict that referred to, and we think the court was fully justified in finding as it did, in effect, that the patented west line of the Calabasas ranch was at the line of the stakes spoken of.

The patent was in evidence, and although not set out in the record, must have furnished *data* from which to demonstrate the error, if any, in plaintiff's claim under it.

The testimony of defendant at the trial, after proving title in himself to the Aptos rancho, was confined to showing that in 1875 a fence was built upon the east line of the disputed land, which it is claimed was with the agreement and understanding that it should be so built and constitute the boundary of their respective tracts of land, and that defendant then entered into possession of and has since as of right retained possession up to such fence.

The finding of the court is against this theory, and we see nothing in the testimony to warrant such theory.

Patterson, who then owned the Calabasas ranch, when applied to on the subject of the division fence, told his agent, Ford, "to let Spreckels build the fence wherever he desired to build it." It further appears that it was, at the request of Spreckels, placed upon the line of the old fence, as far as that extended, and continued on the produced line of such old fence north.

Where coterminous proprietors of land in good faith agree upon, fix, and establish a boundary line between their respective tracts of land, in which they acquiesce and under which they occupy, for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them and those holding under them, or either of them. (*Cooper* v. *Vierra*, 59 Cal. 282; *Sneed* v. *Osborn*, 25 Cal. 619; *Moyle* v. *Connolly*, 50 Cal. 295; *Columbet* v. *Pacheco*, 48 Cal. 395.) Agreements of this character are not subject to the objection that they are within the statute of frauds, because they are not considered as extending to the title. They do not operate as a conveyance so as to pass title from one to the other, but proceed upon the theory that the true line of separation is in dispute, and to some extent unknown, and in such cases the agreement serves to fix the line to which the title of each extends. (Tyler on Boundaries, 254.)

What are boundaries is a matter of law; but where they are is a matter of fact. (*Bolton* v. *Lann*, 16 Tex. 96.)

In the case at bar, the evidence failed to show that the site of the fence was fixed and agreed upon as the boundary line between the two tracts of land.

Patterson seems to have been quite willing that Spreckels should place the fence where he chose, without reference to the true boundary, and his conduct is wanting in the essential element of an intent and willingness to establish a certain and definite line between his property and that of defendant.

We do not find any direct evidence showing that defendant ever occupied the disputed land, or that it was by him so inclosed as to raise a constructive possession.

Under such circumstances, we are not warranted in disturbing the findings of the court below.

The judgment and order appealed from are affirmed.

PATERSON, J., and McKINSTRY, J., concurred.