[Sac. No. 928.   Department Two.—January 26, 1903.]

GEORGE E. DIERSSEN, Appellant, v. CHARLES NELSON, Respondent.

BOUNDARY—UNCERTAINTY — PAROL AGREEMENT — USER —CONCLUSIVE-NESS.—Where the boundary-line between coterminous owners of land is uncertain and undetermined, they may by parol agreement mutually establish a dividing-line, and if they thereafter use and occupy their respective tracts according to such line, upon which a fence is maintained, for a period equal to that fixed by the statute of limitations, such line is conclusively binding upon the parties and their successors in interest.

ID.—TITLE BY PRESCRIPTION—TAXES.—If the strip of land in controversy was not assessed for taxes to either party, the payment of taxes thereon is not an element affecting a title acquired by prescription by adverse user to the line of the fence. Where the assessment of plaintiff's land described it as bounded on the south by the defendant, it must be construed to mean south by the north line of the land occupied by the defendant to the fence fixed by the agreement, and as not including land south of the fence.

ID.—ADMISSIBILITY OF PAROL EVIDENCE—STATUTE OF FRAUDS.—The
admission of parol evidence to show the establishment of an un-
certain boundary-line by contiguous owners and the circumstances
under which the parties acted is not subject to the objection that it
tends to contradict the written instrument of conveyance between
the parties, or that it shows a parol transfer of title in violation
of the statute of frauds. By the fixing of such boundary-line by
parol agreement neither party attempts to convey land to the other,
but the boundary-line being uncertain, they simply agree that under
their deeds their respective lands extend to a certain common divid-
ing-line, fixed by consent, to which they hold by virtue of their title
deeds, and not by virtue of a parol transfer.

APPEAL from a judgment of the Superior Court of Sac-
ramento County. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, and Shinn & Catlin, for Appellant.

Parol evidence was inadmissible to contradict the terms of
the deed from Bogle to Huber. (Civ. Code, sec. 1625; Code
Civ. Proc., secs. 1856, 1858, 1962; Pomeroy's Equity Juris-
prudence, sec. 866; Devlin on Deeds, sec. 800; Jones on Evi-
dence, sec. 460; *Guy* v. *Bibend,* 41 Cal. 312; *Truett* v. *Adams,*
66 Cal. 218; *Bradford Investment Co.* v. *Joost,* 117 Cal. 204;
*Hodson* v. *Varney,* 122 Cal. 619.) The presumption is, that
the land was assessed to the owner of the paper title, and that
he has paid the taxes. (*Reynolds* v. *Willard,* 80 Cal. 605;
*Eberhardt* v. *Coyne,* 114 Cal. 283.) The assessment did not
refer to the fence, but to the true line between the parties.
(*Baldwin* v. *Temple,* 101 Cal. 396.)

Devlin & Devlin, for Respondent.

The evidence shows a valid parol agreement and acquies-
cence of the parties in establishing an uncertain dividing-
line, in accordance with which there has been a user and oc-
cupation of the parties for more than five years. (*Sneed* v.
*Osborn,* 25 Cal. 619; *Moyle* v. *Connolly,* 50 Cal. 295; *Cooper*
v. *Vierra,* 59 Cal. 282; *Truett* v. *Adams,* 66 Cal. 223; *White*
v. *Spreckels,* 75 Cal. 610; *Helm* v. *Wilson,* 76 Cal. 485; *Cav-
anaugh* v. *Jackson,* 91 Cal. 580; *Thaxter* v. *Inglis,* 121 Cal.
593.) Where it cannot be seen that the land in dispute has

been assessed for taxes to either party, title by prescription may be obtained without payment of taxes. (*Harvey* v. *Meyer,* 117 Cal. 64.)

McFARLAND, J.—This is an action to quiet title to certain land. The findings and judgment were for defendant in the court below, and plaintiff appeals from the judgment.

Appellant is the owner of a tract of land adjoining and lying to the north of a tract of land owned by respondent; and the premises here in controversy is a small strip of land, containing about eighteen acres, lying along the boundary-line between the said two tracts. The claim of respondent is, that the boundary-line between the two tracts being uncertain and unsettled, the predecessors of appellant and respondent mutually agreed upon and established a boundary-line in 1886, and afterwards erected a fence thereon, which has been maintained and recognized by all the coterminous owners until about the commencement of this action, in 1899,—a period much longer than the statutory period of limitations of this kind of action. The boundary-line and fence are north of the strip in dispute, and inclose the latter as part of respondent's land, and respondent and his predecessor have possessed and claimed ownership of the same continuously up to said line since 1866. Therefore, respondent contends that the land in controversy is his by the said establishment of the boundary-line, and by the statute of limitations. The court found in accordance with respondent's contention; and we do not think that there is any good reason for disturbing the findings or reversing the judgment.

In 1884, one Herman Huber, appellant's predecessor in interest, owned a tract of land, known as "Swamp Land Survey No. 755," which contains the strip of land in controversy here, and also an adjoining tract of land, known as "Swamp Land Survey No. 343." On February 12, 1884, Huber conveyed to one A. J. Bogle land described as "the north half of Swamp L. Survey 343 and the north half of Swamp Land Survey 755," and on the same day he conveyed to Charles Nelson (respondent herein) land described as "the south half of Swamp Land Survey No. 345 and the south half of Swamp Land Survey No. 755." However, he only intended to convey parts of said surveys,—to wit, to Bogle a tract com-

posing 172 acres, and to Nelson a tract of 171 acres,—but by mistake he conveyed the whole of both surveys, which, according to the patents, contains about 137 acres more than was intended to be conveyed to Bogle and Nelson. Afterwards Bogle and Nelson discovered that Huber had conveyed them too much land, and so informed him. He wanted them to immediately reconvey the surplus, but Bogle objected until a survey should be made showing where the line should be. Huber promised to have the survey made, but did not do so until Bogle and Nelson informed him that they were going to have it done. They employed the county surveyor to run a line, and told Huber of that fact, to which he said, "All right; survey the land." He was present part of the time when the survey was being made; he talked about the line, and said "He supposed they would be all right; he came and examined the stakes afterwards; he was where the stakes were put after the survey was done; he made no objection." This was in 1886. After the survey of this line,—on June 1st of that year, 1886,—Bogle, to rectify the mistake in Huber's deed, as before stated, made a quitclaim deed to Huber, in which the description is as follows: "So much of the extreme northerly part of Swamp Land Survey No. 755 as will constitute 137 acres in township six (6) N, R. 4 E., M. D. B. & M., in the county of Yolo, state of California." The deed contains no other description. Bogle testified: "I received no consideration for making this deed to Mr. Huber other than fixing the boundary and getting my land set off." No objection was afterwards made to this boundary-line by Huber, and about a year and a half afterwards (in 1888) Huber and Bogle built a fence along this line, Huber building the fence on said survey 755 and Bogle on survey 345; and from that time until about the commencement of this suit Huber, who died a year or two afterwards, and his successors in interest, recognized the fence as the boundary-line, and Bogle and respondent— to whom Bogle sold the land about three years before the commencement of the action—possessed, used, and cultivated the land up to the fence, claiming to that line.

We think that the case comes clearly within the principle declared in *Cavanaugh* v. *Jackson,* 91 Cal. 580, and cases there cited, and many other decisions of this court, that when owners of contiguous parcels of land, the boundary-line be-

tween which is uncertain and unfixed, by parol agreement, mutually establish a dividing-line, and thereafter use and occupy their respective tracts according to such line for a considerable period of time, particularly when they so act for a period longer than the statutory period of limitations, and for such period maintain a fence on the line, such line cannot afterwards be controverted by the parties or their successors in interest. In *White* v. *Spreckels,* 75 Cal. 610, the court (page 616) states the rule as follows: ''Where coterminous proprietors of land in good faith agree upon, fix, and establish a boundary-line between their respective tracts of land, in which they acquiesce, and under which they occupy, for a period equal to that fixed by the statute of limitations, the line thus established is binding upon them and those holding under them, or either of them. (*Cooper* v. *Vierra,* 59 Cal. 282; *Sneed* v. *Osborn,* 25 Cal. 619; *Moyle* v. *Connolly,* 50 Cal. 295; *Columbet* v. *Pacheco,* 48 Cal. 395.) Agreements of this character are not subject to the objection that they are within the statute of frauds, because they are not considered as extending to the title. They do not operate as a conveyance so as to pass the title from one to the other, but proceed upon the theory that the true line of separation is in dispute, and to some extent unknown, and in such cases the agreement serves to fix the line to which the title of each extends. (Tyler on Boundaries, 254.)''

2. The cases cited by appellant are not in conflict with this principle. Of course, the building of a fence does not always conclude the parties as to the boundary-line; it may have been built for mere temporary purposes and with no intent to make it the permanent boundary, and it may have been the result of a clear mistake or fraud; but nothing of that kind appears in the case at bar. The court was fully justified in finding ''that prior to said year 1886 the said boundary-line between their said respective tracts of land was uncertain and undetermined.'' The deed under which appellant claims described the land merely as ''so much of the extreme northerly part of Swamp Land Survey No. 755 as will constitute 137 acres.'' It appears from the testimony of respondent's witness Boyd, a surveyor, that Swamp Land Survey No. 755 ''has many different sides of irregular lengths and directions. It is not a regular figure. There are seven different courses

on the north boundary of Swamp Land Survey 755." Appellant's witness Ashley, a surveyor, testified that he could calculate where the southerly line of a tract of 137 acres "of the extreme northerly part of Swamp Land Survey No. 755" would be, simply following the field-notes of the survey filed in the office of the surveyor. He said: "I made no survey upon the ground for the purpose of establishing any portion of the 137 acres of the northerly part of survey 755," and "don't know of my own knowledge where all the exterior lines are; I don't know whether the boundaries close or not." But the surveyor Boyd testified "it would not be possible, as a matter of expert skill, to run a line parallel with all of the north lines so as to constitute 137 acres. One of the northern boundary lines of survey 755 lies south of the south boundary line as calculated by Mr. Ashley." It was apparent, therefore, that the true boundary-line was not only, as is said in *White* v. *Spreckels,* 75 Cal. 610, "to some extent unknown," but difficult, if not impossible, of ascertainment. The case, therefore, comes within the principle which applies to instances of uncertain and undetermined boundary-lines between coterminous owners.

We think that the evidence warranted the court in finding that Herman Huber was a party to the establishment of the line. It is true that the language used by him when the line was being run was not extremely express and explicit, but, taken in connection with the facts that he built a fence on the line and ever afterwards acquiesced in such line, it was clearly sufficient to justify the finding of the court on the subject.

Moreover, we think that respondent has a plain, clear title by prescription. Beyond doubt, respondent held, and was in the actual adverse possession of, the land up to the line of the fence for about a dozen years before the commencement of the action. The only contention against the validity of this title is, that he did not pay the taxes on the land in dispute for five years. He claims that he did pay the taxes on lands assessed to him, which included the strip in controversy. Whether or not this be true, if the strip was not included in the land assessed to him, then it was not assessed at all, and his title by prescription was not thereby affected. (*Harvey* v. *Meyer,* 117 Cal. 60.) Appellant contends that the strip in

dispute was assessed to him, and that he paid the taxes on it. But the description in lands assessed to him which he contends contained the strip, after 1872-1873, is as follows: "Part of S. L. S. No. 555, No. 755, No. 851; bounded N. by Huggins, E. by river, *S. by Bogle,* W. by Green, 155 acres." But "S. by Bogle" must be taken, under the circumstances, to mean to north line of Bogle's land, which was the line established as hereinbefore stated, and the strip in dispute is south of that line, and therefore not included in the land assessed to appellant.

The points made on exceptions to rulings of the court on the admissibility of evidence are not tenable. Some of the evidence objected to was immaterial, and could have done no harm; but the objections of appellant to the evidence were, that it tended to vary and contradict by parol the written instrument of conveyance from Bogle to Herman Huber. But that was not the purpose of the evidence, nor did it have that effect. It was only intended to show the establishment of a boundary-line by two contiguous owners, and the circumstances under which the parties acted. The evidence of the establishment of such line is not evidence of an attempted contradiction of the deeds under which the parties hold or of the attempted creation of an estate in land by parol. By the fixing of a boundary-line neither party attempts to convey land to the other; but, the boundary-line being uncertain, they simply agree that, under their deeds, their respective lands extend to a certain common dividing-line; "after their boundary-line is fixed by consent, they hold up to it by virtue of their title deeds, and not by virtue of a parol transfer." (*Sneed* v. *Osborn,* 25 Cal. 619.)

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.