[L. A. No. 1647.   Department One.—July 30, 1906.]

## SYRA E. LEWIS, Appellant, v. JOHNSON OGRAM. Respondent.

BOUNDARY — AGREEMENT BY ADJOINING OWNERS — ABSENCE OF UNCERTAINTY.—An agreement fixing a boundary line between adjoining owners is not valid for any other purpose than that of settling an uncertainty in regard to the common boundary; and if they agree on a division line knowing that it is not the true line, and with the purpose of transferring from one to the other a body of land which they know his true line does not embrace, without using any words of conveyance, no title passes; and such agreement cannot be enforced.

ID.—WANT OF CONSIDERATION—ABSENCE OF ESTOPPEL.—The agreement not being effective to transfer title cannot create an estoppel by covenant; and being without consideration, it could not in any event operate to create an estoppel.

ID.—AGREED BOUNDARY BETWEEN HOMESTEAD CLAIMANTS—KNOWLEDGE OF FLAGGED SECTION LINE—FINAL SURVEY—ENTRIES.—Where adjoining homestead claimants, with knowledge that the common section line between them had been flagged by the government sur-

veyor, thereafter agreed, but without using any words of convey-
ance, upon a division line by fence, so far away from the flagged
line as to include twenty acres belonging to one claimant in the
land of the other, and a final survey made one year thereafter
established the true line as coincident with the flagged line, to
the knowledge of both the claimants, the agreement cannot be
enforced; and where the claimant having the largest body of
land by the fence entered his homestead claim for only one hun-
dred and sixty acres, the other claimant was not estopped by the
agreed line from entering the twenty acres as part of his claim.

APPEAL from a judgment of the Superior Court of Santa
Barbara County.   J. W. Taggart, Judge.

The facts are stated in the opinion of the court.

William G. Griffith, for Appellant.

B. F. Thomas, for Respondent.

SHAW, J.—Lewis sued Ogram to recover damages for tres-
pass on land alleged to be in his possession, described as the
north half of the northwest quarter of the northwest quarter
of section 23, township 5, range 28.   Ogram filed a cross-com-
plaint in the usual form to quiet his alleged title against the
claims of plaintiff.   Issue was joined upon the averments of
the complaint and cross-complaint, respectively, and after a
trial the court gave judgment for the defendant.   Plaintiff
appeals.

The southwest quarter of section 14 lies north of and adjoins
the northwest quarter of section 23.   The official United States
survey of the boundary line between the sections was not com-
pleted until February, 1900.   In April, 1897, Lewis was resid-
ing upon the southwest quarter of section 14, and Ogram was
residing upon the northwest quarter of section 23, each claim-
ing the right, under the United States land laws, to file a
homestead claim upon his particular tract when open for
entry.   The location of the division line between the two tracts
was at that time uncertain, but both parties supposed it to be
about ten chains south of the true line as afterwards surveyed
and established.   Lewis was occupying all that part of the
actual northwest quarter of section 23, lying between this sup-
posed line and the true line, embracing substantially the north
half of said forty-acre tract, claiming and believing, until

August, 1898, that it was a part of the southwest quarter of section 14, and that it was covered by his entry.  In August, 1898, the government surveyor, at Ogram's request and with the knowledge of Lewis, "flagged" a line through between the two sections, on or near the true line, and set a post at the common section corner thus located at the west end line.  The court finds that Lewis thereafter, until this action was begun, continued in peaceful and exclusive possession of the twenty acres of section 23 in controversy, "but with full knowledge that the said portion of section 23 was not covered by his filing."  The finding also states that the "exact location of the dividing line between said homestead of the plaintiff and the N. W. ¼ of the N. W. ¼ of section 23" was not known by either Lewis or Ogram until the official survey in February, 1900.  In January, 1899, Lewis and Ogram orally agreed to establish a division line between their respective claims, and for that purpose measured ten chains south from the aforesaid line "flagged" by the surveyor, and, at that distance therefrom, built a fence at joint expense, as and for a division fence between their claims.  On November 16, 1899, they executed the following agreement:—

"Whereas there is a controversy between said parties hereto as to the boundary lines of their respective government claims including in part the northwest quarter of the northwest quarter of section 23 township 5 north range 28 west S. B. M. and whereas they are desirous of settling said controversy.  Now therefore said parties do mutually agree as follows, viz.: That the said Ogram will not include in his filing any part of the north half of said parcel of land, and Lewis hereby agrees that he will not include any part of the south half of said parcel of land: The said parties further agree that the fence now subsisting and dividing their respective claims of said parcel of land shall be and remain the division line of their said claims irrespective as to what may be the true line that would divide said parcel of land in two equal parts lying north and south of such true division line.  In witness whereof we have hereunto set our hands this 6th day of November, 1899."

In February, 1900, the official survey was completed, showing that the twenty acres in dispute constituted the north half of the northwest quarter of the northwest quarter of section 23, that it was not included in the homestead claim of Lewis,

and that the line "flagged" through in August, 1898, was substantially correct. On April 5, 1900, Ogram filed his claim for a homestead upon the northwest quarter of section 23, including this twenty acres. In July, 1902, Lewis instituted in the United States land office a contest of the said entry of Ogram with respect to the twenty acres, setting forth as his ground of contest the same facts relied on by him in this action. A hearing of the contest was refused by the register and receiver, no appeal was taken from the ruling, and on September 22, 1902, a patent was duly issued by the United States granting the land to the defendant Ogram.

The rule upon which Lewis, the plaintiff, relies is thus stated in the decisions of this court: "Where coterminous proprietors of land, in good faith agree upon, fix and establish a boundary line between their respective tracts of land, in which they acquiesce, and under which they occupy, for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them." (*Cooper* v. *Vierra,* 59 Cal. 283; *White* v. *Spreckels,* 75 Cal. 616, [17 Pac. 715] ; *Helm* v. *Wilson,* 76 Cal. 485, [18 Pac. 604] ; *Dierssen* v. *Nelson,* 138 Cal. 398, [71 Pac. 456].) In other cases it is said that the occupancy in pursuance of the agreement need not continue for the period of the statute of limitations. This is obviously so where other conditions creating an estoppel exist. (*Cavanaugh* v. *Jackson,* 91 Cal. 583, [27 Pac. 931] ; *Helm* v. *Wilson,* 76 Cal. 485, [18 Pac. 604].) This qualification, however, is not important in this case. Such an agreement, necessarily, is not valid for any other purpose than that of settling an uncertainty in regard to the common boundary. If adjoining owners agree on a division line, knowing that it is not the true line, and with the purpose of thereby transferring from one of them to the other a body of land which they know his true line does not embrace, the agreement will not be enforced. Such a transaction would not constitute an adjustment of uncertainties or doubts as to the line, but would be an attempt to convey or release land from one to the other. Land cannot be conveyed by the device of moving fences or changing the marks or monuments which define its limits. If an agreement having for its real object the transfer of the land, but relating by its terms solely to the boundary line and made with knowledge that the true line is elsewhere than at the place fixed, is

oral, it would be void, being an attempt to transfer land without writing. If it is in writing it would be ineffectual to pass title, for it would lack the apt words of conveyance that are necessary to accomplish a transfer of real property. The authorities are to the effect that these agreements, when deemed valid, are of such a nature that they do not operate upon the title at all. It is said that "one party does not purport or attempt to sell or convey to the other any land" (*Sneed* v. *Osborn,* 25 Cal. 630) ; that such agreement is "not a contract for the sale or conveyance of lands, and has no ingredients of such a contract" (*Boyd* v. *Graves,* 4 Wheat. 513) ; that "adjoining owners who adjust their partition line by parol, do not create or convey any estate whatever between themselves; no such thought or intention influences their conduct; after their boundary line is fixed by consent they hold up to it by virtue of their title deeds and not by virtue of a parol transfer" (*Hagey* v. *Detwiler,* 35 Pa. St. 409) ; and that "agreements of this character . . . are not considered as extending the title. They do not operate as a conveyance so as to pass the title from one to the other, but proceed upon the theory that the true line of separation is in dispute, and to some extent unknown, and in such cases the agreement serves to fix the line to which the title extends." (*White* v. *Spreckels,* 75 Cal. 616, [17 Pac. 715].)

The facts found clearly show that the agreement in question, although in terms purporting only to fix the division line, could have had no other object or purpose than to operate upon the title or right of possession of the parties to the land which they knew was not within the limits of Lewis's claim. There was, it is true, some uncertainty as to the "exact location" of the section line at the time the agreement was made, but it arose solely from the fact that the flagged line, although made by the government surveyor, had not then become official or final and was still subject to correction and change. The findings, properly construed, are not in conflict on this subject, as claimed by the appellant. There was no doubt or uncertainty over the fact that the so-called division line agreed upon was not the true line, nor anywhere within ten chains of the true line, nor over the fact that the true line did not include in Lewis's claim any part of the twenty acres lying between the agreed line and the flagged line, the same twenty acres

which Lewis now seeks to have transferred to him by virtue of the agreement. The agreement itself indicates this, for it does not recite that there was any uncertainty about the location of the line, but merely that there was a "controversy" about it, which, of course, may have arisen from some other cause. The findings place the absence of such doubt beyond question. Lewis knew that his claim extended only to the south line of section 14, and that it did not cover any of the twenty acres in question, which the agreed line would give him. He, therefore must have known that the true line was not ten chains south of the flagged line, but was either coincident with the flagged line or somewhere to the north of it. The object and purpose of the agreement, therefore, could not have been to resolve or settle any existing doubts as to the exact location of the section line. This explains the finding that no consideration passed. If the agreement was made to settle a doubt about the division line, and in good faith to substitute an arbitrary line as the boundary, no other consideration than the mutual concessions of the parties would be necessary. The court below must, therefore, have believed that there was no such purpose and no such concession, and that, for the real object it was intended to accomplish, no consideration was given or received. The line agreed on, in view of the known facts, had no relation to the true line, and could not have been intended to represent the true line. There must have been some ulterior object. It may have been made for the purpose of allowing Lewis an opportunity to change his possession and, when the land was open for entry, file his claim to include this twenty acres, as he would have had the right to do. But he did not see fit to do this, and when the time within which he could have done so expired, Ogram, or any other qualified person, was at liberty to enter it.

Whatever the real purpose may have been, the agreement can have no present effect on the title. It does not by its terms purport to convey or transfer any land, or operate upon the title in any manner, and, consequently, does not effect an estoppel by covenant or agreement. And being without consideration, it could not, in any event, operate to create such an estoppel. It had no relation whatever to the true line, nor to any doubt concerning the location of the boundary, and hence it does not come within the rule which makes an agreed

line binding between the parties, not as a contract to convey, but as an attempt in good faith to make certain that which before was in doubt. We are therefore of the opinion that the court below was correct in its decision.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.