[Sac. No. 1406. In Bank.—September 19, 1907.]

## DANIEL L. MANN, Respondent, v. CATHERINE MANN et al., Appellants.

BOUNDARIES—PAROL AGREEMENT ESTABLISHING — UNCERTAINTY AS TO BOUNDARY.—The rule that where coterminous proprietors of land in good faith agree upon, fix, and establish a boundary line between their respective tracts of land, in which they acquiesce, and under which they occupy, for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them, is subject to the limitation that the agreement must be for the purpose of settling some uncertainty or dispute as to the real boundary.

ID. — PAROL AGREEMENT FOR EXCHANGE — KNOWN BOUNDARY LINE.— Where coterminous landowners, knowing that a portion of the land of each was separated from the main body of the tract to which it belonged by a county road, orally agreed to exchange the parcels so separated, and built fences and went into possession of the pieces as if the exchanges had been effected by proper conveyances, such agreement had no effect as an agreement for the location of a disputed boundary line, and did not operate to effect the exchange.

ADVERSE POSSESSION — PAYMENT OF TAXES ESSENTIAL. — The actual occupation of land, initiated in the year 1884, cannot ripen into title by adverse possession, in the absence of a showing that the possessor of the land or his grantors had for the statutory period paid the taxes which had been levied upon the land, as required by section 325 of the Code of Civil Procedure.

EJECTMENT—LEGAL TITLE SHOWN IN PLAINTIFF—IMMATERIAL PAROL EVIDENCE.—In an action to recover the possession of a tract of land, to which the plaintiff established a clear title in himself by the production of a deed conveying the legal title, a defendant, relying

solely upon the ineffectual defenses of adverse possession and a parol agreement as to boundaries, was not injured by the admission of parol evidence tending to show that the plaintiff had acquired the title before he received the deed conveying the legal title.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. P. O'Brien, for Appellants.

F. P. Otis, and F. W. Street, for Respondent.

SLOSS, J.—This action was brought to recover possession of a parcel of land situate in Tuolumne County. The plaintiff recovered judgment declaring that he was the owner and entitled to possession of the premises. The defendants appeal from the judgment and from an order denying their motion for a new trial.

The land in question is a portion of the northeast quarter of the southwest quarter of section 15, township 1 north, range 14 east. On February 1, 1882, a United States patent was issued to Thomas Sayre for certain land which included said northeast quarter of the southwest quarter of section 15. Adjoining this forty-acre tract on the south lies lot 2 of said section 15, for which, on May 20, 1882, a patent was issued by the government of the United States to Sarah A. Mann. The defendants are the successors in interest of Sarah A. Mann, while plaintiff claims to be the successor in interest of Thomas Sayre. For many years prior to the issuance of either of the patents above mentioned, a county road, known as the Woods Crossing and Campo Seco road, had run, and still runs, diagonally through lot number 2 and through the northeast quarter of the southwest quarter of section 15, leaving a triangular piece of lot 2 lying to the north of the road, and a piece of the northeast quarter of the southwest quarter of section 15, similar in shape, south of said county road. The latter is the parcel in controversy. The respective patentees of these adjoining tracts had been in occupation of the same before they received their patents.

About the year 1873, the Sayre tract was inclosed with a fence. The Mann tract was inclosed with a fence in the year 1884. In inclosing each of these tracts the owners built their respective fences upon the lines of the county road,— that is to say, Thomas Sayre built his fence along the northerly line of the Woods Crossing and Campo Seco road, thus inclosing the portion of lot 2 lying to the north of that road, and the occupant of the Mann tract built a fence along the southerly line of the road, inclosing a portion of the northeast quarter of the southwest quarter of section 15 within said fence. Thomas Sayre and his successors have during all of the intervening years included within their inclosure, and occupied and used, the portion of lot 2 which lies north of the county road, and the defendants and their predecessors have, during all of these years, included within their inclosure, and occupied and used, the portion of the northeast quarter of the southwest quarter of section 15 which lies south of the road. On August 29, 1903, Ann O'Donnell, who had succeeded to the interest of Thomas Sayre in the northeast quarter of the southwest quarter of section 15, conveyed to the plaintiff the strip of land in controversy.

By showing that the property in dispute was a part of the northeast quarter of the southwest quarter of section 15, patented to Thomas Sayre, and that he was the grantee of the successor in interest of Sayre, the plaintiff made out a *prima facie* case of title in himself.

The defendants pleaded in their answer that they were the owners of lot 2 in section 15, and that for more than twenty-five years the Woods Crossing and Campo Seco road had been recognized and acquiesced in by the defendants, their grantors and predecessors in interest, and by their coterminous owners, and by all other persons, as being the common dividing line between the Mann tract (including lot 2) and the lands of the adjoining owners; that about twenty-five years ago the said county road was fixed upon and established by the defendants' grantors and predecessors in interest and by their coterminous owners as being the common boundary line between the said Mann tract and the lands of the contiguous owners thereof; that said lands were inclosed and fenced according to said boundary line so fixed and established, and that said inclosures and fences have ever

since been maintained upon said common dividing line; that the lands involved in this controversy are included within the inclosures and fences of the Mann tract and made a part thereof.

In the cross-complaint substantially the same facts are alleged, together with the further fact that during all of said times the defendants and their grantors have occupied said lands and premises and claimed the same as their own, and during all of said time have paid all taxes which were levied and assessed upon said premises. The cross-complaint prays that the defendants' title be quieted against any claim of the plaintiff. The findings of the court were against the affirmative defense set up and against the allegations of the cross-complaint. The court found that the dividing line between the northeast quarter of the southwest quarter of section 12, and lot 2 in said section 15, is a certain line as surveyed in 1884 or 1885 and established by iron pins driven in the ground. It found, further, that the county road above referred to has never been recognized or acquiesced in by the coterminous owners as being the common dividing line between the lands owned by defendants and the lands of the adjoining owners; that in the year 1884 a fence inclosing the property in dispute had been erected, but said fence did not fix or establish the boundary line between said lot 2 and said northeast quarter of the southwest quarter of said section 15. There is also a finding against the plea of adverse possession.

The main contention of the appellants is that these findings are contrary to the evidence. It is urged that the testimony of several witnesses shows without conflict that prior to the erection of the fences two agreements had been made between Sarah A. Mann, the owner of lot 2, and the then owners of the adjoining premises, whereby the said county road was agreed upon as the boundary of the respective parcels of land. The defendants rely upon the rule, declared by repeated decisions of this court, that "where coterminous proprietors of land in good faith agree upon, fix, and establish a boundary line between their respective tracts of land, in which they acquiesce, and under which they occupy, for a period equal to that fixed by the statute of limitations, the line as thus established is binding upon them." (*Cooper* v.

*Vierra,* 59 Cal. 283; *White* v. *Spreckels,* 75 Cal. 616, [17 Pac. 715]; *Helm* v. *Wilson,* 76 Cal. 485, [18 Pac. 604]; *Dierssen* v. *Nelson,* 138 Cal. 398, [71 Pac. 456].) But this rule is subject to the limitation that the agreement must be for the purpose of settling some uncertainty or dispute as to the real boundary. This qualification was fully explained in *Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 87 Pac. 60], where Shaw, J., in speaking of an agreement which purported to fix a boundary between adjoining parcels of land, said: "Such an agreement, necessarily, is not valid for any other purpose than that of settling an uncertainty in regard to the common boundary. If adjoining owners agree on a division line, knowing that it is not the true line, and with the purpose of thereby transferring from one of them to the other a body of land which they know his true line does not embrace, the agreement will not be enforced. Such a transaction would not constitute an adjustment of uncertainties or doubts as to the line, but would be an attempt to convey or release land from one to the other. Land cannot be conveyed by the device of moving fences or changing the marks or monuments which define its limits. If an agreement having for its real object the transfer of the land, but relating by its terms solely to the boundary line and made with knowledge that the true line is elsewhere than at the place fixed, is oral, it would be void, being an attempt to transfer land without writing. If it is in writing it would be ineffectual to pass title, for it would lack the apt words of conveyance that are necessary to accomplish a transfer of real property. The authorities are to the effect that these agreements, when deemed valid, are of such a nature that they do not operate upon the title at all."

The testimony which is relied upon by defendants as showing that the county road had been agreed upon as the boundary line between lot 2 and the land lying to the north thereof, shows clearly that the parties in making such agreements were not endeavoring to settle any dispute or doubt as to what the actual boundary was, but were in fact undertaking to exchange a piece of land lying south of the road, and which was a part of the northeast quarter of the southwest quarter of section 15, for a tract of about equal size which lay north of the road, and was in fact a part of lot 2. It

was known to the parties at the time they made the alleged agreements that the true boundary line between the two adjoining tracts of land was not the county road, and the object sought to be accomplished was not to ascertain and fix the boundary, but to make transfers of the two parcels, so that all of the land owned by each party should be on one side of the road.

The witness Metzgar, the first witness called by the defendants to prove such an agreement, testified that in 1873 he had been in possession of the property subsequently patented to Sayre; that at that time he had built a fence along the line of the Campo Seco and Woods Crossing road pursuant to an understanding with Mrs. Mann, the occupant of the Mann tract. "The understanding we had was, we thought owning equal portions of the land to put the fence there; she owned a little more than I did on one side of the road, and I on the other; we agreed to run the line there, and when we got the title to deed back to the other." And on cross-examination, being asked, "That is she was to convey what lay north of the road and you were to convey to her what lay south of the road?" he answered, "That is the agreement we had all around with quite a number of neighbors; had the same agreement." The witness James Bogan testified that at the time the Sayre tract had been sold in 1884 the representative of the vendor had said "that there was a small portion of the Mann tract north of the Campo Seco road, and a small portion of the Sayre tract south of the Campo Seco road, and that the fences were to remain as they were because they had traced them off; that there was an agreement between Mrs. Mann and Sayre." The defendant Esther Durgan testified that she had been present on many occasions when conversations occurred between her mother, Sarah A. Mann, and Thomas Sayre. The conversations occurred between 1868 and 1871. They were "in regard to an exchange of a piece of land in Mr. Sayre's property and the piece of land in my mother's property, and they agreed to exchange properties. It was said that the fence should be constructed on the line along the side of the road instead of across the road with the other fences."

Taking the testimony of these witnesses as uncontradicted, the utmost that is established is that the parties, knowing

that a portion of the land of each was separated from the main body of the tract to which it belonged by the county road, orally agreed to exchange the parcels so separated, and that they built fences and went into possession of the pieces as if these exchanges had been effected by proper conveyance. Such agreement, under the rule declared in *Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 87 Pac. 60], could have no effect as an agreement for the location of a disputed boundary line. As was said in that case, "It had no relation whatever to the true line, nor to any doubt concerning the location of the boundary, and hence it does not come within the rule which makes an agreed line binding between the parties, not as a contract to convey, but as an attempt in good faith to make certain that which before was in doubt." Notwithstanding the alleged agreements, therefore, the land here in controversy still remained a portion of the northeast quarter of the southwest quarter of section 15, just as the piece for which it was to have been exchanged remained a portion of lot 2.

Nor did the defendants establish their plea of adverse possession. Granting, as they contend, that the evidence shows that they were in the actual occupation of the disputed premises since the construction of the fence in 1884, claiming them as their own, there was no evidence that the defendants or their grantors had for the statutory period paid the taxes which had been levied upon the land, as required by section 325 of the Code of Civil Procedure. The only evidence in this regard was that they had paid the taxes upon lot 2. But, as we have seen, the premises in question were not a portion of lot 2, but were a part of the northeast quarter of the southwest quarter of section 15, and the taxes on this subdivision were paid by Sayre's successors. The statutory requisite to the acquisition of a title by adverse possession had therefore not been fulfilled.

The plaintiff, who had been in possession of the Mann tract as a life tenant, testified that during his occupancy he had made an agreement with one O'Donnell, then the owner of the Sayre tract, by which he was "to exchange the piece on the south side, when he (I) could get title to it for this corner." The defendants objected to this testimony "on the ground that the writing is the best evidence," and now assign

the overruling of the objection as error. If we assume that the objection was properly framed and should have been sustained, the admission of the evidence was in no way harmful to the appellants. The plaintiff showed a clear title in himself by the production of the deed from Ann O'Donnell. No attempt was made to meet this case otherwise than by defendants' claims,—1. That the property in question had become a part of the Mann tract by the agreement as to boundaries; and 2. That the defendants had a good title by adverse possession. Neither of these claims was established by the evidence. It is immaterial, therefore, that the plaintiff was allowed to prove matter, which, as he claimed, had a tendency to show that he had acquired the Sayre title before the conveyance from Ann O'Donnell.

From what has been said it follows that the findings that the county road had not been fixed by the coterminous owners as being the dividing line of the adjoining tracts, and that the defendants did not have title by adverse possession, were fully sustained by the evidence. It follows further that the court properly determined that the plaintiff was the owner of the premises in question.

It may be added that the question whether the defendants, on pleadings framed for that purpose, would be entitled to a decree specifically enforcing the alleged agreements of exchange, is not here involved. The answer and cross-complaint, asserting title to the disputed premises to be in the defendants, do not contain the allegations required in a bill for such relief, nor do they seek it.

The judgment and order appealed from are affirmed.

Shaw, J., Angellotti, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.