[L. A. No. 3101. Department One.—May 6, 1913.]

## JOHN J. SCHWAB, Jr., Appellant, v. DAN DONOVAN, Respondent.

BOUNDARY—AGREEMENT FOR LOCATION OF UNCERTAIN LINE—ACQUIESCENCE FOR PERIOD OF LIMITATION.—When the owners of parcels of land divided by a common boundary described in their deeds, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.

ID.—REVIEW OF EVIDENCE.—This case, which involved the establishment of the boundary line between adjacent pieces of land, is held, upon a review of the evidence, to clearly come within the foregoing rule.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order refusing a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Lamy & Putnam, for Appellant.

Paul M. Gregg, for Respondent.

SLOSS, J.—This is an action of ejectment, brought to recover possession of a triangular strip of land situate in the county of San Luis Obispo. The complaint describes the premises as part of lot 3 of section 35, in township 12 north, range 35 west, San Bernardino base and meridian, and sets forth a particular description by metes and bounds. The answer denies plaintiff's ownership as well as his right of possession, and asserts ownership, right of possession, and actual possession to be in the defendant. It further alleges as a separate defense that lots 3 and 4 of section 35 are contiguous lots, their common boundary being the northerly line of lot 3 and the southerly line of lot 4; that the exact location of the boundary is and has been uncertain and unknown to the owners of lots 3 and 4, and that the southerly line of the strip in controversy has at all times been taken and considered by the owners of the respective lots to be the northerly line of lot 3. The plaintiff claims a part of lot 3 by mesne conveyances from James Brennan, to whom a patent was issued by the United States on December 1, 1876. The defendant claims lot 4 in like manner under Florentine Najar, to whom patent issued on August 20, 1881. It is further alleged that prior to the issuance of the patent to Brennan, and ever since, there has been a permanent and substantial fence constructed along the southerly line of the disputed strip, and that said fence has been maintained, recognized, and accepted by the owners of lot 3 and lot 4 as the true boundary line between their respective tracts. The owners of lot 4 have at all times occupied, used, and cultivated the strip to the fence, and the owners of lot 3 have occupied the land to the south of said fence. The answer also alleges that in 1888 the defendant was the owner of lot 4 and one Cal-

lender the owner of lot 3; that at said time the fence was old
and broken down, and defendant, with Callender's consent,
constructed a good and substantial fence along said line, and
it was agreed between said Callender and the defendant that
said fence should be considered the true and correct boundary
line. Such fence has ever since been maintained as the true,
correct and agreed boundary between lots 3 and 4. The plain-
tiff has never been in possession of any land lying north of
the fence.

The findings were in favor of the defendant on all these
issues. Judgment followed, declaring that plaintiff is not
entitled to the possession of the land in controversy. Plaintiff
appeals from the judgment and from an order denying his
motion for a new trial.

The various findings regarding the ownership of the strip,
and the fixing of the fence line as the boundary of the two
lots, are assailed as unsupported by the evidence.

It appears that the dividing line between the two lots, if
marked on the ground according to the government surveys,
should have been run due east and west. The defendant,
owner of lot 4 had, however, occupied to a line beginning at
the easterly end of the true southern boundary of his lot,
and running thence south 76 degrees 13 minutes west. This
line, together with the due east and west line, and the line
which bounded both lots 3 and 4 to the west, inclosed a tri-
angular strip containing about 4 acres, which is the land in
controversy. It is not disputed that Donovan, the defend-
ant, and his predecessors in interest, have always been in pos-
session of this triangle, and that they have farmed it, down
to its southerly line, as a part of lot 4, there being no fence
to separate it from said lot 4. Nor is there any controversy
over the fact that upon this southerly line there has been a
substantial fence, at least since 1888. One witness testified
that there had been a fence upon that line in 1881, while an-
other stated that from 1884 to 1887 there was no fence, but
that there were stones, which had supported the joints of an
old rail fence, along the line occupied by the fence now stand-
ing.

The defendant acquired lot 4 in 1888. At that time C. R.
Callender was the owner of lot 3, having purchased it in
1887 of Cornelius Donovan. In the same year the defendant

constructed the fence last mentioned. He testified that, before he began the construction he had told Callender that he was going to put a fence on the line of the old rail fence; that he had said to Callender, "You own that land there that you have got of Con Donovan; you ought to put up half that fence." Callender replied that he was very busy, but "if you feel like doing it, you go ahead and put up the fence and I will pay for it." The westerly part of lot 3 was, in 1891, conveyed by C. R. Callender to G. W. Callender by a deed which described the piece conveyed by metes and bounds in such manner as to make its northerly boundary run along the southerly line of the strip in dispute. Schwab, the plaintiff, acquired lot 3, except the portion theretofore conveyed to G. W. Callender, by deed dated September 7, 1898. The evidence is ample to sustain the conclusion that Schwab, at the time he bought, believed the fence line to be the true northern boundary of his line. That C. R. Callender had entertained the same belief is indicated by the manner in which he described the land conveyed by him to G. W. Callender. Schwab first discovered that the fence was not on the true line about two and a half years before the trial, when, having heard something that raised a doubt in his mind, he had a survey made. Even then he made no claim to the land north of the fence until he commenced this action. The evidence, too, was ample to warrant the court in believing that Donovan and his predecessors in interest had always thought that lot 4 extended southerly to the fence line, and had occupied and claimed the land to the fence as a part of lot 4. It was further shown that, after the erection of the fence in 1888, G. W. Callender and the plaintiff himself helped to keep the fence in repair.

This evidence, taken as a whole, clearly brought the case within the well-established doctrine that when the owners of parcels of land divided by a common boundary described in their deeds, "being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called

for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements." (*Young* v. *Blakeman,* 153 Cal. 477, [95 Pac. 888]; *Sneed* v. *Osborn,* 25 Cal. 619; *Cooper* v. *Vierra,* 59 Cal. 283; *White* v. *Spreckels,* 75 Cal. 610, [17 Pac. 716]; *Helm* v. *Wilson,* 76 Cal. 476, [18 Pac. 604]; *Dierssen* v. *Nelson,* 138 Cal. 394, [71 Pac. 456]; *Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60]; *Loustalot* v. *McKeel,* 157 Cal. 634, [108.Pac. 707]; *Price* v. *De Reyes,* 161 Cal. 486, [119 Pac. 893].) Such an agreement, not in writing, will not be effective, where the parties actually know the location of the true line, and the real purpose is to transfer land from one to the other. (*Lewis* v. *Ogram,* 145 Cal. 505, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60]; *Mann* v. *Mann,* 152 Cal. 23, [91 Pac. 994].) But here the testimony fully establishes that there was no such purpose and that all the parties acted in the belief that the fence was in fact the boundary. It is not necessary that there should have been a dispute regarding the true line. (*Helm* v. *Wilson,* 76 Cal. 476, [18 Pac. 604]; *Price* v. *De Reyes,* 161 Cal. 486, [119 Pac. 893].) That the line of the fence was acquiesced in for much longer than the statutory period of limitation was abundantly shown. And we think the defendant's testimony, above quoted, was such as to justify the finding that he and Callender had agreed on the fence line as the boundary of their respective tracts. The statement that Callender owned the land that he had bought of Con Donovan, and ought to put up half the fence, clearly implied that such fence marked the boundary of Callender's land. Callender's agreement to pay showed that he assented to defendant's proposal in this sense, and the subsequent acquiescence of the owners of lot 3 in defendant's occupation and use of all the land north of the fence goes far to confirm the view that the transaction of 1888 was intended to operate as an agreement fixing the boundary of the two tracts. (See *Dierssen* v. *Nelson,* 138 Cal. 394, [71 Pac. 456].) Evidently the trial court accepted the defendant's testimony, as, of course, it had a right to do, although such testimony was contradicted on some points by other witnesses.

It must, accordingly, be held that the findings that plaintiff was not the owner or entitled to the possession of the premises

in controversy, and that the boundary between lots 3 and 4 had become fixed by agreement at the southerly line of the disputed strip are fully supported by the evidence. If these findings stand, the plaintiff can have no right of recovery, regardless of the findings on other issues. We need not enter into a discussion of the question, argued by appellant, whether respondent had acquired a title to the land by prescription. His claim does not rest upon prescription, but upon an agreement fixing the boundary in such manner as to make the strip in controversy a part of lot 4, which was unquestionably owned by him.

The appellant does not argue any other points.

The judgment and the order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.