[Civ. No. 1423.   Third Appellate District.—December 31, 1915.]

## LUKA PERICH et al., Appellants, v. SADIE MAURER et al., Respondents.

BOUNDARY—CITY LOTS—SUFFICIENCY OF EVIDENCE.—In this action in ejectment and for damages for the unlawful detention of land, which involved the location of the boundary line between two lots in the city of Sacramento, upon the dividing line of which a fence had existed for probably forty years, or more, it is held that in view of the meager character of the evidence of the real boundary line as located and fixed by the original survey of the city (Sutter survey of 1848 or 1849), and in accordance with which the deeds of the parties were made, and of the existence of the fence, and of the inclusion of the disputed strip in the inclosure of the defendant, the court was justified in finding that the plaintiffs had failed to establish any title to the property in controversy.

APPEAL from a judgment of the Superior Court of Sacramento County.   C. N. Post, Judge.

The facts are stated in the opinion of the court.

W. A. Gett, for Appellant.

M. S. Wahrhaftig, for Respondent.

BURNETT, J.—The action was in ejectment and for five hundred dollars' damages for the unlawful detention of the land, and the judgment was in favor of defendants for costs. The real question in the case concerns the location of the boundary line between the land of plaintiffs and that of de-

fendants. It was admitted that each of the parties deraigned title from John A. Sutter, the plaintiffs to the "east 35 feet of lot 2 in the lot between N and O streets and Fifth and Sixth streets in the city of Sacramento and the defendants to the west one-half of lot No. 3" in said block. It is shown very clearly that there is, and has been for many years, probably forty or more, a fence on the dividing line as claimed by respondents. Their dwelling-house in the rear also extends to this line, and the entire holding of respondents is, and has been for many years, inclosed. It is the contention, however, of appellants that respondents have included in their inclosure a strip about twenty inches in width belonging to the former, and thus the controversy has arisen.

To establish their claim plaintiffs called D. R. Cate, a civil engineer, who testified that in 1911 he surveyed the lots in question, that it was an accurate survey from the "monuments of the city as they were found at the intersection," that according to said survey the west fence of Mrs. Maurer was over on the land of Mr. Perich; "at N Street it is 1.58 feet; 20.3 feet, back from N—that is, toward the alley—it is 1.26 feet. The porch that goes up into the house is 1.9 feet over. The main part of the building back of the porch is over 1.56 feet and the back end of the building is 1.21 feet. The barn which is 129.68 feet from N Street is 1.81 feet. That is where the fence joins the barn." The way he traveled in reaching the foregoing conclusion is indicated by his statement in answering questions of the court to the effect that he found there were 400.95 feet between "stones—between the centers of street intersections"; that, taking forty feet for the half of Fifth Street and forty for the half of Sixth Street there would remain 320.95 feet to be divided into four lots or "practically eighty feet and a quarter for each lot." According to this calculation he located the boundary line between plaintiffs and defendants at varying distances, with a maximum, as we have seen, of over twenty inches farther east than said fence and improvements would indicate.

For the defendants, one J. C. Boyd, a civil engineer and surveyor of long experience, testified: "There were practically two surveys of the entire city as a whole; the first in laying out of the city originally by Sutter; subsequently, in 1878, a resurveying by L. S. Bassett, then city engineer, who attempted to adjust the apparent difference in the property

ownership to the line of the streets, for the purpose of street improvement largely, and for the purpose of rectifying errors that were shown to have been made by private surveys of private property, lots, and so forth. It had been the custom theretofore to make surveys from the established monuments, from buildings, taking the nearest building as being a corner, approximately correct, and run out from that''; that the Sutter survey was made in 1848 or 1849 and the Bassett survey in 1878; that these two surveys do not agree, that Bassett attempted to adjust differences through the city, that his policy ''was to run a line for several blocks as long as possible, the longer the better, and adjust it with existing conditions''; that there is no way of determining whether this recent survey ''conforms to the original survey, the Sutter survey''; that he considered that there was physical evidence that there was a line fence established by agreement between the coterminous owners and ''the only monument that we could accept of the old Sutter survey would be the consideration of old buildings''; furthermore, that the Bassett survey ''most assuredly is not the accepted survey at this time for the measurement of lots in the city of Sacramento,'' and ''that considered in the light of the original survey, I do not think there is any part of lot 2—as originally surveyed—in this inclosure,'' declaring this was his professional opinion from a physical examination of the entire block including the said fence and ''other collateral evidence.''

The foregoing is substantially all of the expert testimony in the case. In addition, as we have stated, the evidence is ample of the occupancy and inclosure for many years in accordance with the claim of respondents, although the proof falls short of title by prescription. The court found specifically: ''That plaintiffs and defendant Sadie Maurer have deraigned their respective titles from the same grantor, to wit, J. A. Sutter; that said J. A. Sutter had surveyed and laid out the blocks and lots in the said city of Sacramento, over sixty years ago, and that all the monuments of such survey have been obliterated; that since that time, there has been no official survey adopted by the city of Sacramento, except that one city surveyor, Bassett, in or about 1878, caused an arbitrary adjustment of the various subdivisions within the then city limits of the said city of Sacramento, so as to facilitate the uniform grading or paving of streets and sidewalks, and such survey

of adjustment has been and now is conformed to by the said city of Sacramento, and for the purposes aforesaid; at plaintiffs' claim of twenty inches is based upon the arbitrary survey of the said city surveyor Bassett; that the dividing line, according to said arbitrary survey of Bassett, was not and is not the true line as surveyed and laid out by the common grantor, to wit, J. A. Sutter.

"That defendant Sadie Maurer and her grantors have continuously, for a period of over forty years, owned and occupied the land and premises described in her answer to the plaintiffs' complaint herein, and paid taxes therefor; that during all of that time, and probably much longer than such period of time, a fence between her land and that of the plaintiff was taken and considered by all as the dividing line; that the land of the defendant Sadie Maurer has for that length of time been inclosed, and so inclosed was all of that time occupied as the land of said defendant and her grantors, described in her answer to plaintiffs' complaint herein; that plaintiffs bought the adjoining land also inclosed by fences, and as so inclosed."

The evidence is meager, but, no doubt, it was difficult to secure evidence of the boundary line as located and fixed at the time of the Sutter survey.

As to the showing made by plaintiffs, it is apparent that it was quite incomplete and unsatisfactory. They bore the burden of proof, and it is at least doubtful whether there was sufficient evidence to support a finding in their favor. According to the Bassett survey, it is true, they have the legal title to the strip of land, or at least a portion of it, which they claim in their complaint. But the real boundary line was determined by the Sutter survey and the deeds were made in accordance with that survey. To that we must look, therefore, for the location of said line. The Bassett survey was made, admittedly, thirty years subsequent to the other, and we are left largely to conjecture as to the degree of correspondence, if any, between the two. The contention that the later survey is virtually a duplication of the earlier is based upon the assumption that the monuments found at the intersections of the streets by Bassett were recognized by Sutter and that the lots as established by the latter were all of the same size. As to these points the record is entirely silent,

and we cannot forbear feeling that the case made out by plaintiffs is hopelessly weak.

We are not required, however, to hold that a judgment in favor of plaintiffs would be unsupported, as there is substantial evidence to uphold the contention of defendants. As to this, we observe the opinion of the expert Boyd that there is no part "of lot 2 as originally surveyed" within defendants' inclosure. There was no objection made that this was not a matter of expert testimony. Besides, the witness proceeded to state certain facts tending at least to support his conclusion. The most important of these, probably, was in reference to the fence which has been claimed for so many years as marking the boundary line. The fence itself is a monument, visible and obtrusive, which has existed for forty years or more, that under the peculiar circumstances of this case is quite persuasive in favor of the claim of defendants. It is a fair presumption that this fence was originally placed upon the true line as then recognized and understood, and it is proper to assume, in the absence of evidence to the contrary, that when the fence was built, either that the contiguous owners had knowledge and information of the lines of the Sutter survey and acted accordingly, or that the true line was uncertain and by agreement it was fixed and marked by said fence. It is not surprising that this fence seemed so important to Boyd and to the trial judge. Its existence for so many years, the recognition accorded it as the true boundary, the acquiescence of the respective owners in the location and the improvements made accordingly were rightfully regarded as important, if not decisive, considerations in the determination of a line otherwise obscure and uncertain. It is true that no one testified directly that the boundary was actually located on the ground or that there was uncertainty in reference to it, but such may be fairly inferred from the various facts disclosed, and we may invoke the principle announced in *Schwab* v. *Donovan*, 165 Cal. 360, [132 Pac. 447], and cases therein cited. This must be especially true since there is no clear and satisfactory showing here that the legal title is different from what is indicated by the fence.

Of course, it is true, as said in *Dierssen* v. *Nelson*, 138 Cal. 398, [71 Pac. 456], that "the building of a fence does not always conclude the parties as to the boundary line; it may

have been built for mere temporary purposes and with no intent to make it the permanent boundary and it may have been the result of a clear mistake or fraud; but nothing of that kind appears in the case at bar." Not only does nothing of that kind appear here, but the rational inferences are contrary, as we have seen.

Again, considering the imperfect showing of plaintiffs and the fact that the Bassett survey was repudiated by expert Boyd as a safe criterion by which to gauge the Sutter survey, we may conclude that the court was entirely justified in holding that plaintiffs had failed to establish any title to the property in controversy. Even further, it may be admitted that the evidence as to the fence was insufficient to locate the boundary line as contended for by respondents. The result of this view of the record would be, of course, a vindication of the judgment for defendants for costs. Moreover, without dispute, it was established that defendants and their predecessors are, and have been for many years, in possession of the property. This mere occupancy is a species of title which would prevail, manifestly, over no title at all.

We think there is no doubt that considerations of equity as well as the exacting requirements of the law demand an affirmance of the judgment, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.