[L. A. No. 3738.    Department One.—July 14, 1916.]

## R. CORDS, JR., Appellant, v. J. W. GOODWIN et al., Respondents.

VENDOR AND VENDEE—SHORTAGE IN ACREAGE—AGREEMENT ADJUSTING DISCREPANCY—CONSIDERATION.—Where an agreement contains mutual covenants or promises running from the one to the other, each promise or covenant by one party is a consideration for the promise or covenant of the other, and therefore the agreement is not without a sufficient consideration.

ID.—PRICE DETERMINED BY ACREAGE CONVEYED—DEDUCTION FROM MORTGAGE ON ACCOUNT OF SHORTAGE.—Upon the sale of an undetermined area of land at a fixed price, by the acre and not in gross, the price to be paid is determined by the number of acres actually included in the tract conveyed. And if the grantee gives a mortgage for the balance of the purchase price, he is entitled to a deduction of the indebtedness to the extent that there is a shortage in the acreage.

ID.—DESCRIPTION BY GOVERNMENTAL SURVEY — ACREAGE INCLUDED IN SURVEY—EVIDENCE TO CONTRADICT.—Where the land is described by

a governmental section, the purchaser is not conclusively bound by the official survey as to the number of acres included therein, but may offer evidence to contradict it in that respect.

ID.—VENDEE ENTITLED TO POSSESSION—FAILURE TO OBTAIN POSSESSION —ABATEMENT OF PRICE.—Where one makes an agreement of sale binding him to deliver possession to the purchaser, the latter is entitled to possession before being called upon to pay the price. He is not obliged to accept a mere paper title to the property and rely upon his success in an action for possession against the person holding adversely. If he gives a mortgage for the purchase price, he is entitled to an abatement upon the mortgage debt proportionate to the amount of the land of which he fails to obtain possession.

ID.—MORTGAGE FOR PURCHASE OF LAND HELD ADVERSELY—FORECLOSURE —ADVERSE HOLDER NECESSARY PARTY.—In an action to foreclose such mortgage for an unpaid balance of the purchase price proportionate to the quantity of a part of the land the legal title to which passed by the deed but the possession of which was held adversely, the mortgagor is not entitled to a decree declaring the mortgage satisfied, nor the mortgagee to a foreclosure, until the adverse holder is made a party to the action, and a judicial determination is had as to the validity of his adverse claim.

APPEAL from a judgment of the Superior Court of Santa Barbara County refusing a new trial. Samuel E. Crow, Judge.

The facts are stated in the opinion of the court.

C. M. Fickert, and E. A. Lane, for Appellant.

Canfield & Starbuck, and Goodfellow, Eells, Moore & Orrick, for Respondents.

SHAW, J.—This case comes up on an appeal by the plaintiff from an order denying his motion for new trial.

The object of the action was to cancel a certain agreement relating to the satisfaction of a mortgage, to reform a release of the mortgage executed in pursuance of said agreement, and thereupon to foreclose said mortgage. The ground on which the relief was asked was that the agreement and release were given in consequence of a mutual mistake of the parties.

On June 18, 1908, one Tillman made an agreement in writing to sell to Goodwin a tract of land, stating therein that it contained 797 acres, more or less, at $150 per acre, making a total price of $119,550. The agreement provided that when

two-thirds of the price was paid Tillman should convey the land to Goodwin and Goodwin should execute a mortgage thereon for the remaining $39,850. The land at that time was all inclosed by fences supposed to include it all except a small tract in the northeast corner. Goodwin took possession of the land within the fences and of the small uninclosed tract, and has ever since held possession thereof. On June 14, 1910, Goodwin having paid the two-thirds of the purchase money, Tillman conveyed the land to him and he executed the mortgage to Tillman thereon for the remainder of the price. At the time this was done Goodwin claimed that the tract contained less than the 797 acres called for by the agreement. It was then understood between them that the matter would be adjusted before the mortgage was paid. Afterward Tillman assigned the mortgage to the plaintiff, Cords, who, as it seems, took with knowledge of the facts concerning the shortage. The land was in township 9 north, range 32 west, in Santa Barbara County. The remainder of the description as given in the instruments was as follows: "Of section twenty-eight, the whole; of section twenty-seven, the northwest quarter of the northwest quarter, the fractional south half of the northwest quarter, and the fractional southwest quarter." The land was bounded on the east by the westerly line of a Mexican grant known as the Tinaquaic Rancho. The intersection of this line caused the fractional subdivisions of section 27.

Soon after the execution of the mortgage Goodwin caused a survey to be made of the land inclosed by the fences and the small uninclosed tract in the northeast corner by Flournoy, the county surveyor, and found that the amount of land of which he had obtained possession was only 704.01 acres, making a difference of 92.99 acres between the actual amount of land obtained and that called for by the agreement of sale. The balance of the purchase price secured by the mortgage became due on June 18, 1911. In July, 1911, being ready to pay the balance justly due, Goodwin showed to Cords, who then held the mortgage, the map of the land made by Flournoy, displaying the lines of the fences and of the tract surveyed by Flournoy, informed Cords that the survey showed only 704.01 acres in his possession, and stated that it was supposed that some part of the land described in the mortgage was in the possession of one Hansen who owned the land adjoining the tract on the north. The agreement dated July 22, 1911, was

then executed by Cords and Goodwin to provide for the adjustment of the discrepancy in the acreage. It referred to the original agreement of sale with Tillman, stated that said sale was made on the basis of 797 acres at $150 per acre, that two-thirds of the price had been paid and the mortgage executed for the remainder, that Goodwin claimed an offset against the mortgage because of a partial failure of consideration growing out of the fact that the land contained less acreage than the contract called for, and declared that it was made to reconcile and settle said claim. It provided that Goodwin should pay at once $25,901.50 on the mortgage, being the balance of the price for the 704.01 acres, that on receipt thereof Cords should execute to Goodwin "a release from the lien of said mortgage of all land lying south of a line drawn from the northeast corner of section twenty-nine in said township and range, thence east to the westerly line of the Tinaquaic Rancho, at a point distant south 23° 45′ W., 513.13 feet distant from a redwood post marked 'T. No. 1, F F F' set for the northwesterly corner of said rancho"; that Goodwin should, at the expense of Cords, immediately sue the claimants of the land lying north of said last-described line, and that if he thereby succeeded in establishing that any of the land described in his deed lay north of said line and should recover possession thereof accordingly, "then the sum of $13,948.50 shall be and become immediately due and payable if land so recovered shall equal 92.99 acres and if less than 92.99 acres, the balance due and payable upon said mortgage shall be reduced" proportionately, and that upon payment of the amount so ascertained the mortgage should be entirely canceled.

On the same day Goodwin paid the $25,901.50 and Cords executed the release. The release recited the giving of the mortgage, its assignment to Cords, the payment of $25,901.50, and declared that Cords thereby released from the lien of the mortgage "All of the property described in said mortgage lying south of the following line, viz.: Commencing at the common corner of section twenty, twenty-one, twenty-eight and twenty-nine, in township nine north, range thirty-two west, San Bernardino Base and Meridian, and extending thence easterly to a point in the northwesterly line of the Tinaquaic Rancho, which point is situated south 23 degrees 45 minutes west and distant 513.13 feet from the northwest corner of said Tinaquaic Rancho, containing seven hundred and four and

01/100 acres. It being the intention hereof to leave ninety-two and 99/100 acres of land still subject to the lien of said mortgage.'' The court found, and the evidence shows that the line described in the release was the same line as that described in the agreement, although the release does not mention the redwood post marked "T. No. 1 F F F." Goodwin commenced a suit, as provided in the agreement, against one Hansen, for the recovery of the land believed to be north of the line above described, but, finding that the fence line on the north coincided with the north line of the land mortgaged, the suit, at the request of Cords, was dismissed.

The complaint alleges that said release and agreement were executed ''under a mutual mistake of fact, to-wit: It being represented by the defendant, J. W. Goodwin, and believed by the plaintiff that there was an adverse claim to that portion of said mortgaged premises lying north of a line described in said partial release as commencing at the'' northwest corner of section 28 ''and extending thence easterly to a point in the northwesterly line of the Tinaquaic Rancho, which point is situated south 23° 45' W., and distant 513.13 feet from the northeast corner of said Tinaquaic Rancho, containing 92.99 acres''; that plaintiff was induced to and did make such agreement and release in the belief that said representations set forth in said agreement were correct, but that in fact there is not and never has been any adverse claim to any of said mortgaged premises and that the same are correctly described in the said agreement of July 18, 1908. The complaint, in a second count, alleges that the agreement and release were executed without consideration. A third count alleges the execution of the mortgage and the part payments aforesaid and asks foreclosure thereof.

With respect to the alleged mistake the findings are not clear. They state that the agreement and release were not executed by the parties thereto under any mutual or other mistake of fact, that Goodwin did not represent, nor Cords believe, that there was an adverse claim to any part of the land mortgaged. But this is preceded by the finding that they both agreed and admitted that all of the tract mortgaged lying outside of the said fences was held adversely by third parties, but that nevertheless they ''mutually doubted whether said northerly boundary thereof coincided with said northerly fence line

CLXXIII Cal.—5

as shown on said map (made by Flournoy), or ran in a north-easterly direction from'' the northwesterly corner of section 28, so as to include north of the fence the whole or a part of the remaining 92.99 acres, and that thereupon, for the purpose of paying for the 704.01 acres received in possession by Goodwin and resolving said doubt as to the remainder of the 797 acres and to provide for the payment for all or any part of said remainder if any part thereof lay north of said described line, they made the said agreement. The finding last mentioned, taken in connection with the contents of the agreement and release and the finding that none of the land lay north of said line, are, in effect, findings that the agreement and release were both executed under a mutual mistake, and that the mistake consisted of the common belief that some of the land did lie north of the described line. This, in substance, was the mistake alleged. If the court intended to find otherwise, such finding would be contrary to the effect of the instruments coupled with the undisputed facts proven by the evidence. We must, therefore, consider the case on the theory that the mistake alleged was sufficiently established, and that the plaintiff should have the relief he would be entitled to by reason of that fact.

The court also found that the mortgage and any and all indebtedness thereby secured had been and is fully paid and satisfied, that no part of the land described therein remained subject to said mortgage, as security or otherwise, and that the release and agreement of July 22, 1911, were executed for a valuable consideration. These findings are challenged by the plaintiff on the ground that they are contrary to the evidence.

The mutual agreements of the respective parties, that of Goodwin to immediately pay the $25,901.50 and begin the action against the claimants of the land lying northerly of the described line, and that of Cords to release from the mortgage lien all land lying south of said line, were sufficient consideration to uphold the agreement and release if they had been freely made without mutual mistake. There is no merit in the claim that they were without consideration.

The important and controlling question is whether or not the finding that the mortgage is satisfied is supported by the evidence. If the mortgage is satisfied, the case is at an end. It would avail nothing to the plaintiff to have the release reformed so as to leave a part of the land unreleased, if the

mortgage itself is no longer of any force, as would be the case if it is satisfied.

The following propositions are determinative of the question: 1. The sale of the land by Tillmann to Goodwin was a sale of an undetermined area of land by the acre, at $150 per acre for the quantity conveyed by a good and sufficient title. This proposition is established by the terms of the agreement of sale and by the terms of the agreement and release of July 22, 1911. The parties so understood it and they have acted accordingly; 2. Upon such a sale the purchaser is bound to pay only for the land which is included within the tract described, at the agreed price per acre, and when he has done so his debt for the purchase money is discharged; 3. The agreement of sale bound Tillmann to convey by good title and to deliver possession to the purchaser. In such a case, even if it is a sale in gross, the vendor cannot recover the purchase money for any part of the land of which he is unable to give the purchaser the possession. As to such part, if any, there is a failure of consideration of the mortgage, equivalent to a satisfaction *pro tanto.*

It needs no argument to establish the proposition that upon the sale of land at a fixed price, by the acre and not in gross, the price to be paid is determined by the number of acres actually included in the tract conveyed. "If an estate be sold at so much per acre, and there is a deficiency in the number conveyed, the purchaser will be entitled to a compensation." (1 Sugden on Vendors (324), Perkins' ed., 489.) Upon this rule Goodwin is entitled to a deduction from the mortgage to the extent that there is a shortage in the number of acres included in the tracts described therein. The tracts consisted of government subdivisions which, according to the courses and distances set forth in the government survey, embraced an area of 796.76 acres, instead of 797 acres as stated in the agreement of sale, a discrepancy too small to be worthy of notice. Section 28, by that survey, included 640 acres. The survey made by Flournoy showed that it contained only 626.29 acres. The appellant errs in his claim that the number of acres within that section is conclusively settled by the government survey and that no evidence can be received to contradict it in that respect. Such evidence does not contradict the record survey, within the meaning of the rule forbidding evidence to contradict writings. It merely serves to show

that the distances given in the survey between the monuments at the respective corners of the sections are not accurate. The rule is that measurements always give way to monuments and that parol evidence can always be given to show that the actual distance is different from the distances given in the notes of the survey. (Code Civ. Proc., sec. 2077.) This will of necessity show a discrepancy between the actual acreage and that stated as part of the description.

The third proposition is also well established. Where one makes an agreement of sale binding him to deliver possession to the purchaser, such purchaser is entitled to possession before being called upon to pay the price. He is not obliged to accept a mere paper title to the property and rely upon his success in an action for possession against the person holding adversely. (*Pierce* v. *Edwards,* 150 Cal. 653, [89 Pac. 600]; *Benson* v. *Shotwell,* 87 Cal. 58, [25 Pac. 249, 681]; *King* v. *Knapp,* 59 N. Y. 467; *Shriver* v. *Shriver,* 86 N. Y. 584; *Tyson* v. *Eyrick,* 141 Pa. St. 313, [23 Am. St. Rep. 287, 21 Atl. 635]; *Hays* v. *Hays,* 126 Ind. 92, [11 L. R. A. 376, 25 N. E. 600].)

The shortage in section 28 accounts for 13.71 of the total shortage of 92.99 acres. Under the second proposition above stated the mortgagor is entitled to a rebate of $2,056.50 on the purchase price and a corresponding reduction on the mortgage debt, by reason of this deficiency in the area of that section.

According to the notation on the government survey there should have been 156.76 acres of land in the subdivisions of section 27 included in the conveyance and mortgage, or in round numbers, as the parties stated it, 157 acres. The area as determined by Flournoy would leave a shortage of 79.28 acres in the several tracts lying in section 27 described in the deed and mortgage. The evidence shows that this shortage is caused by the encroachment of the owner of the adjoining Tinaquaic Rancho upon the easterly side of section 27. Many years ago, in establishing the boundaries which he claimed, the owner of that rancho set fences along the westerly boundary thereof adjoining section 27. The evidence indicates that he has ever since maintained the fences on the line thus located. It overlaps the boundaries of the subdivisions of section 27 aforesaid far enough to include this shortage of 79.28 acres. This land is properly within the bounds of the descriptions contained in the mortgage, but the purchaser, Goodwin,

has never obtained possession thereof and, apparently, Till-
mann and Cords, his successor in the mortgage, are unable to
deliver the possession thereof to him. Under the authorities
above stated, Goodwin is clearly entitled to an abatement upon
the mortgage debt to the amount of this shortage. A case
precisely in point is *Voorhees* v. *De Meyer,* 2 Barb. (N. Y.) 37.
The facts were identical, in effect, with those here disclosed,
and the decision was that the purchaser was entitled to com-
pensation by a rebate on the purchase price.

These two discrepancies completely account for the unpaid
portion of the mortgage debt. If the proper parties were be-
fore the court, so that the decision on the question would be
binding on all persons concerned, we could justly hold that the
finding that the mortgage is satisfied is sustained by the evi-
dence. The difficulty arises from the fact that the owners
of the Tinaquaic Rancho, who are in possession of the overlap
included within the mortgage description, are not parties to
the action. The defendants have acquired the record title
to the land included in the overlap, but have not received
possession. If the judgment stands in its present condition
we cannot say that the defendants may not hereafter be able
to obtain possession of this overlap. The mortgage debt is
not fully paid. If the defendants should succeed in obtaining
possession of the overlap, or if the plaintiff should succeed in
procuring it for them, he would be entitled to enforce his mort-
gage for the balance thereof unpaid and chargeable to this
overlap, against the land included in the overlap. With the
record as it stands, this right cannot be preserved to him. The
evidence, it may be observed, indicates that this right is
barren of any benefit and that he would meet with inevitable
failure because of the long continued adverse possession of the
adjoining owners. But this cannot be conclusively deter-
mined in a suit in which the adjoining owners are not parties.
The legal possibility of obtaining possession of this land must,
so far as the record as it now stands is concerned, remain open.
The mortgage is not absolutely satisfied, but only conditionally
so, that is, it is satisfied so far as the land in possession of the
defendants is concerned, but it remains a possible lien for the
proportional part of the balance unpaid thereon upon the land
included in the overlap. The finding is, to that extent, un-
supported by the evidence. This possibility of the right is not

of sufficient importance to warrant a new trial upon all of the issues in the case. Nor does it make it necessary that the judgment be vacated with respect to the land in possession of the defendants. Upon this appeal from the order denying a new trial we cannot modify the judgment so as to preserve this possible lien to the plaintiff, or otherwise protect the respective parties. We can only make a limited order for a new trial respecting it. In order to make a new trial as to the overlap and the mortgage lien thereon of any substantial benefit to the parties, it is necessary that the persons in adverse possession thereof be made parties to the action, as otherwise no judgment respecting the overlap declaring it subject to the mortgage would be of any benefit to the defendants to entitle them to possession, or to the plaintiff to entitle him to foreclose. If those persons have not acquired adverse title by prescription or otherwise, the overlap found to exist would be subject to the mortgage. If they have such title, of course no judgment could be given against them. Substantial justice can be done with respect to this overlap by directing a new trial of the case with respect thereto, providing the plaintiff shall bring in the persons in possession thereof as parties to the action, so that they may be bound thereby, and allowing the judgment to stand as it is with respect to all of the land in the possession of the defendant. As the plaintiff had notice that other persons had possession and claimed title to the land lying easterly of said fence, before he began this action, and did not make them parties, he should not recover costs on this appeal because of the limited reversal of the order.

The order denying a new trial is affirmed so far as it affects the land described in the mortgage and lying westerly of the line of the fence surveyed by Flournoy in 1910 as the westerly line of the Tinaquaic Rancho. With respect to the land described in the mortgage lying easterly of said fence, the order is reversed and the cause is remanded for a new trial. Upon such new trial the court below is directed to allow the pleadings to be amended, to bring in as new parties the persons claiming the said overlap and thereupon to determine whether or not the present defendants, in virtue of their title derived from Tillmann, are entitled to possession of said overlap and if it concludes that they are so entitled, to enforce said mortgage against the land by foreclosing the same for the amount

of land included in the overlap at the agreed price of $150 per acre. It is further ordered that each party shall pay his own costs upon this appeal.

Sloss, J., and Lawlor, J., concurred.