[Sac. No. 4162. In Bank.—July 22, 1929.]

JOHN S. KEIPER, Appellant, v. WINIFRED B. DUNN, etc., et al., Respondents.

John C. March and R. Platnauer for Appellant.

Chauncey H. Dunn and Downey, Brand, Seymour & Dunn for Respondents.

SEAWELL, J.—Plaintiff appeals from a judgment for defendants in an action to quiet title. Plaintiff, John S. Keiper, and one Chauncey H. Dunn, at the time of his death, were the owners of adjoining lots in the city of Sacramento. Defendants are the executrix and executors of the will of said Dunn and other persons who assert an interest in the

property under him. The action involves a dispute as to the location of the boundary line between said two lots.

The block in which said lots are located is bounded on the west by Fourteenth Street, on the north by J Street, on the east by Fifteenth Street and on the south by K Street. Said block is cut by an alley, which runs approximately through the center of the block from Fourteenth to Fifteenth Street. The sections of the block on each side of the alley were originally divided into four lots, with an approximate frontage of 80 feet each. Lot 8, which constitutes a portion of the estate of said Chauncey H. Dunn, deceased, is situate at the southwest corner of said block, and lot 7, the western portion of which is owned by plaintiff, adjoins it on the east side. Both lots extend back to the alley.

Plaintiff claims that the boundary line delineated on the map prepared by one Bassett from a survey made by him as city surveyor in 1878 is the true division line between said lots 7 and 8. For many years a board fence lay to the east of said division line indicated on the Bassett map, distant therefrom, according to the testimony of the witness Rooney, 1.97 feet at the line of K Street and 1.4 feet at the alley. The contention of defendants, upheld by the court below, is that the line established by an official survey of 1854, with reference to which sections of the city were laid out, is controlling and that the line of said fence, rather than the line indicated on the Bassett map, is the boundary established by said survey of 1854. The dispute concerns the strip of land between the boundary line of lots 7 and 8 as indicated on the Bassett map and the line to the east thereof, which for many years was marked by said wooden fence.

A three-story building, occupied by defendant Heald's Business College under lease, is situate on lot 8 and extends beyond the boundary line indicated on the Bassett map to the fence line at the alley and to within a few inches thereof at K Street. It does not appear that plaintiff or his predecessors ever occupied said strip of land in any manner.

. Defendants further alleged that between 1870 and 1880, the boundary line between said lots 7 and 8 being uncertain, the respective owners erected said fence and agreed that it marked the division or boundary line. Defendants also claimed title to said strip of land by adverse possession.

Defendants declare the rule to be that boundaries established by an original official survey, with reference to which titles are vested, are not changed by the filing of an official map of a later survey delineating differently located boundaries. (*Winchester* v. *Payne*, 10 Cal. App. 501 [102 Pac. 531]; *Perich* v. *Maurer*, 29 Cal. App. 293 [155 Pac. 471].)

█ The difficulty in the instant case was to locate the line of the earlier survey. We think the view of the court below that the division line appearing on the Bassett map was not the line of the survey of 1854, but that the fence marked said ancient line is sufficiently supported by the evidence to sustain the judgment decreeing defendants to be the owners of the parcel of land in dispute.

The map of the early survey, adopted as the official map of the city in 1854, was characterized by witnesses as being fragmentary, inaccurate and lacking in data and measurements which would enable it to be used as a basis for subsequently locating lots upon the ground. The surveyor preparing it either placed no permanent monuments in the streets, or the monuments became obliterated. The map of said survey showed blocks of uniform size, each divided into eight lots of equal size, with intersecting streets or alleys of uniform width at right angles. The streets as actually developed and used presented a different appearance. Bassett, as city surveyor in 1878, prepared the Bassett maps to supply plats from which property could be located with a greater degree of accuracy. The Bassett maps and the Bassett street intersection monuments are now commonly used in making surveys of lots within the city, and descriptions are generally prepared with reference to said maps and monuments. J. C. Boyd, a licensed surveyor, who was city engineer at one time, testified that Bassett took the physical conditions found on the ground and co-ordinated the system of streets in reference to the physical monuments, or buildings, or occupied positions, placing permanent monuments in the street intersections to serve as future reference points.

It appears, however, from the testimony of said Boyd, that the Bassett survey in a number of instances did not conform to the boundary lines indicated by the physical existence of streets, buildings, concrete walks and other indicia of property lines. Boyd's testimony would indicate that the pre-

ponderance of evidence was that the Bassett monuments and maps marking and delineating the block in which said lots are situate did not conform to the original survey. Two plats or maps prepared by Boyd were introduced in evidence as defendants' exhibits. Said plats show that not only does the line of the fence above referred to lie to the east of the Bassett line dividing lots 7 and 8, and also that the building upon lot 8 extends beyond said Bassett line, but also that there existed an old wooden fence commencing on K Street, .09 feet east of the Bassett boundary line between lots 6 and 7. The probable inaccuracy of the Bassett line is made more evident by the fact that the fence dividing lots 5 and 6 is 1.55 feet east of the Bassett line at the point where it intersects the alley. The builders of an old shed constructed upon said lot 5 accepted said ancient wooden fence as the division line. Boyd testified that the sidewalks on the block were made at different times by different persons and that the joints were practically even with the fence lines. He estimated the fences as having been built between forty and sixty years ago, and stated that in his opinion said old fences more correctly represented the lines of the survey of 1854 than did the Bassett intersection monuments and lines.

Ella McCleery, one of the joint grantors from whom defendants' intestate received title, testified that her parents acquired ownership of lot 8 in 1886, and that she became and continued to be familiar with the property from that date until 1912, in which year she and her sisters conveyed it to defendants' intestate. In 1886 an old fence marked the east line of the lot. Said fence existed at the time they disposed of the lot. They claimed up to the fence line. Charles H. King, who lived on the southeast corner of the block, at Fifteenth and K Streets, from 1866 to 1880 or 1883, testified that there was a board fence approximately 80 feet from the east side of Fourteenth Street, and a residence upon lot 8, but lot 7 was unoccupied and used by children as a playground. J. C. Rooney, a civil engineer, testified that he made a survey in 1911 and found a fence east of the Bassett boundary and along the line to which defendants claim to own.

We think it clearly appears that the fence referred to by the witnesses Rooney, McCleery and King, and claimed to mark the boundary line, was placed upon the property some time

prior to 1873, when the witness King first remembered to have seen it as a young child. In *Perich* v. *Maurer,* 29 Cal. App. 293 [155 Pac. 471], it was asserted, as in the instant case, that there was a discrepancy between the lines of the original survey and the Bassett lines. The law as announced by the District Court of Appeal in that case may appropriately be quoted in sustaining the judgment declaring the fence line as the true boundary in the instant case. In that case, as here, the question was the location of a division line in the city of Sacramento, dependent upon the same surveys and similar facts presented by the instant case. The court said:

"The fence itself is a monument, visible and obtrusive, which has existed for forty years or more, that under the peculiar circumstances of this case is quite persuasive in favor of the claim of defendants. It is a fair presumption that this fence was originally placed upon the true line as then recognized and understood, and it is proper to assume, in the absence of evidence to the contrary, that when the fence was built, either that the contiguous owners had knowledge and information of the lines of the Sutter survey and acted accordingly, or that the true line was uncertain and by agreement it was fixed and marked by said fence. It is not surprising that this fence seemed so important to Boyd and to the trial judge. Its existence for so many years, the recognition accorded it as the true boundary, the acquiescence of the respective owners in the location and the improvements made accordingly were rightfully regarded as important, if not decisive, considerations in the determination of a line otherwise obscure and uncertain."

The deed to Dunn conveying to him lot 8 and quitclaiming to him the west two feet of lot 7, and Dunn's description of the property as lot 8 and the west two feet of lot 7 in the notice of completion filed by him under the mechanic's lien law, which descriptions were obviously made with reference to the Bassett map, did not constitute binding admissions that the Bassett survey was correct in the degree that would preclude defendants from showing that the true boundary included approximately two feet of the west portion of lot 7 as indicated on the Bassett map. The metes and bounds description of lot 7 prepared by Boyd and adopted by plaintiff in his complaint was a description of lot

7 as delineated on the Bassett map, and the survey of said lot made by him for plaintiff was according to the Bassett lines and did not purport to be a representation that the Bassett line coincided with the lines of the early survey.

Plaintiff was properly denied his costs. The only portion of the land described in the complaint of which plaintiff was adjudged to be owner was the land east of the fence line, to which defendants asserted no claim, but admitted plaintiff's ownership in fee. (Sec. 739, Code Civ. Proc.)

Judgment affirmed.

Preston, J., Waste, C. J., Curtis, J., Langdon, J., and Richards, J., concurred.