[Civ. No. 8620. Third Dist. Aug. 12, 1955.]

W. B. RODGERS et al., Respondents, v. ROSEVILLE GOLD DREDGING COMPANY (a Corporation) et al., Defendants; CARROLL A. LEASON, Appellant.

*Assigned by Chairman of Judicial Council.

Herman D. Jerrett for Appellant.

F. H. Bowers for Respondents.

FINLEY, J. pro tem.*—This is an appeal from the judgment in a quiet title action involving a common boundary dispute. Judgment was in favor of plaintiffs, quieting their title to the disputed area and fixing the boundary according to a survey which their evidence showed was designed to follow the line of a previously existing fence between the properties, which fence was obliterated when the property was dredged for gold.

These adjoining properties lie immediately north of the old Auburn-Sacramento Road in Placer County. It is admitted that for many years prior to 1934 the two parcels were separated by a wire fence which commenced at the southwest edge of the Auburn-Sacramento Road and extended approximately 1,400 feet therefrom in a northwesterly direction. Likewise it is undisputed that said fence was obliterated in 1934 when the property was dredged for gold. However appellant denies that the true eastern boundary line of his property was marked by the former fence, or that it was located where claimed by respondents.

Appellant urges these points for reversal in his opening brief:

"1. The plaintiffs did not establish a title in themselves to the premises in controversy (Parcel 2) superior to that of the defendant Leason.

"2. That the boundary lines in Parcel 2 having a bearing N. 37 10′W, and a distance of 1396.02 feet, and of N.01 22½′E. a distance of 1386.8 feet, have not been properly identified by the plaintiffs as the true lines between the contiguous lands of the Plaintiffs and the Defendant Leason.

"3. There was not substantial evidence in the case sufficient to support the Findings and Decree that the Plaintiffs acquired title to the land in controversy by adverse possession.

"4. That the Decree Quieting Title in the Plaintiffs is against law."

It is obvious that each point urged depends for its validity, if any, upon the sufficiency of the evidence to support the trial court's finding and judgment. Appellant points to no errors or irregularities in the proceedings of the trial court, nor

---

*Assigned by Chairman of Judicial Council.

is prejudice claimed by reason of any rulings made in admitting or excluding evidence. Under the heading, "INTRODUCTION TO THE ARGUMENT," in appellant's opening brief appears this statement:

"The record as well as the evidence show no occupancy and possession by the plaintiffs of the lands in controversy under Parcel 2. Neither does the evidence produced determine and establish, on the part of the plaintiffs, the true boundary lines disputed by the action of the plaintiffs."

It seems quite plain that the question of "occupancy and possession" in this case would depend upon whether the land claimed by respondents and to which the decree quieted their title lay on respondents' side of the line marked by the obliterated wire fence. The essential claim to occupancy and possession made by them is that they occupied and possessed the land because it did lie within the enclosure or on their side of the fence, or at least the long-accepted line delineated by the original presence of the fence. (Code Civ. Proc., § 325. See also *Posey* v. *Bay Point Realty Co.*, 214 Cal. 708 [7 P.2d 1020], and cases therein cited.)

The obvious crux of the entire controversy then is the location of the demolished fence, which we hold the trial court justifiably accepted as marking the true boundary.

Respondents testified that the southeast end of said fence was attached to an old oak tree near the northwest edge of the Auburn-Sacramento Road, and was directly across from and in a straight line with a presently standing fence which extends to the southeast. Mr. Packard, a civil engineer who made the survey and prepared the plat upon which the description of respondents' property is based, testified that he established the disputed western boundary thereof by starting at the stump of the old oak tree and projecting therefrom to the northwest a line which, if extended across the Auburn-Sacramento Road, would coincide with the fence which runs therefrom in a southeast direction. He further testified that he found remnants of a fence at both extremities of said line, but that all other evidence thereof had been removed and obliterated. Mr. Packard testified that preparatory to making his survey, he studied old abstracts and the field notes of the land office in order to place the section corners, the markers of which had disappeared. The results of his work differed slightly from that of Mr. Andregg who was produced as an expert witness by appellant, but we are not concerned with the relative accuracy of their surveys.

Appellant's complaint seems to be directed more to a lack of proper identification of the property to which respondents' title was quieted rather than to the methods employed by Mr. Packard. Appellant states in his brief that, "The controlling question in the case is, were the premises in controversy properly and sufficiently identified as the premises described in the complaint of the Plaintiffs, or prior written grant or record." It is true that the description of respondents' property in the complaint and judgment herein is not identical with that contained in a prior quiet title decree or in certain deeds in the chain of title. However, although Mr. Packard referred to, and quoted from, said documents, none was introduced in evidence and no plea of res adjudicata was interposed. The description of respondents' property in the complaint and judgment herein is based on the plat prepared by Mr. Packard which was introduced in evidence, and which he testified depicted the result of his survey. Such identification of respondents' property was sufficient. It was not necessary that the description thereof be established by "prior written grant or record." The decree is based on a finding of adverse possession for which there is sufficient evidentiary support. There is no merit in appellant's contention to the contrary.

Respondents testified that prior to the dredging operations in 1934 their pear orchard had extended up to the old fence and that buildings, since destroyed, stood approximately 30 to 50 feet west thereof. They further testified that since 1907 they had occupied and paid taxes on the property extending up to the former fence. Since said fence was used by Mr. Packard as the basis for the description herein of the western boundary of respondents' property, it is clear that the evidence amply supports the trial court's finding as to adverse possession.

The true location of the survey of a tract of land is a question of fact. (*Miller* v. *Doheny*, 50 Cal.App. 413 [195 P. 745].) It is an old and well established principle that in boundary disputes monuments control over courses and distances. (Code Civ. Proc., § 2077, subd. 2; *Phelps* v. *Pacific Gas & Elec. Co.*, 84 Cal.App.2d 243 [190 P.2d 209]; *Cords* v. *Goodwin*, 173 Cal. 61 [159 P. 138]; *Howard* v. *Cunningham*, 36 Cal.App. 229 [171 P. 976]; *Golden* v. *City of Vallejo*, 41 Cal.App. 113 [182 P. 347]; *Weaver* v. *Howatt*, 161 Cal. 77 [118 P. 519]; *Hunt* v. *Barker*, 27 Cal.App. 776 [151 P. 165].) Where circumstances have seemed to warrant,

fences have been considered as monuments as will appear from the following language in *Keiper* v. *Dunn,* 207 Cal. 643, 647 [279 P. 772], quoting with approval from *Perich* v. *Maurer,* 29 Cal.App. 293 [155 P. 471]:

" 'The fence itself is a monument, visible and obtrusive, which has existed for forty years or more, that under the peculiar circumstances of this case is quite persuasive in favor of the claim of defendants. It is a fair presumption that this fence was originally placed upon the true line as then recognized and understood, and it is proper to assume, in the absence of evidence to the contrary, that when the fence was built, either that the contiguous owners had knowledge and information of the lines of the Sutter survey and acted accordingly, or that the true line was uncertain and by agreement it was fixed and marked by said fence. It is not surprising that this fence seemed so important to Boyd [a licensed surveyor] and to the trial judge. Its existence for so many years, the recognition accorded it as the true boundary, the acquiescence of the respective owners in the location and the improvements made accordingly were rightfully regarded as important, if not decisive, considerations in the determination of a line otherwise obscure and uncertain." (See also *De Escobar* v. *Isom,* 112 Cal.App.2d 172 [245 P.2d 1105]; *Hannah* v. *Pogue,* 23 Cal.2d 849, 856 [147 P.2d 572]; and *Togni* v. *Slocomb,* 12 Cal.App. 733 [108 P. 723].)

As we have pointed out above, the location of the survey of a tract of land is a question of fact. The trial court, upon conflicting evidence, found in favor of respondent. We are satisfied that the findings and decision are amply supported by competent and legally sufficient evidence, and beyond this we are not required to go. (*Risley* v. *Lenwell,* 129 Cal.App.2d 608, 625 [277 P.2d 897]; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427 [45 P.2d 183]; and *Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689].)

As was said in *Sonkin* v. *Hershon,* 130 Cal.App.2d 491, 492 [279 P.2d 156]:

"It is not the province of a reviewing court to present a detailed argument on the sufficiency of the evidence to support the findings where it appears that the question is one purely of determining which side shall be believed. The trial court having determined this with the witnesses before it, the controversy is settled."

The judgment is affirmed.

Schottky, J., concurred.