[Civ. No. 680.   Third Appellate District.—March 8, 1910.]

CHAS. TOGNI and MICHAEL TOGNI, Respondents, *v.* HENRY SLOCOMB, Appellant.

Disputed Boundary of City Lots—Common Grantors—Reference to South Boundary of Block — Support of Finding — Ancient Fence.—In an action to determine the disputed boundary of city lots deeded by common grantors, each of which referred to the south boundary line of the block for measurement, it is held that a finding by the court that the location of the south boundary of the block is determined by the location of an ancient fence, which has constituted such south boundary for nearly fifty years, is abundantly supported by the evidence.

Id.—Rights of Grantor to Fix Boundary.—The grantor owning the lots granted to each grantee had the right to fix the boundaries of the land which was conveyed.

Id.—Change in Northern Boundary—Reduction in Size of Block by Opening Street—South Boundary Unaffected.—Notwithstanding a fence located as the north boundary was mistaken, since the location of a street opened on said boundary reduced the size of the block, and the northern fence was changed thirty-five feet farther south, yet this did not affect the fence constituting the south boundary, which always remained unchanged.

Id.—Description of Land Granted.—Any description of land granted will suffice, which identifies it with such certainty that the specific parcel intended to be granted can be ascertained either by the calls of the instrument as applied to the land, or by the descriptive features of the grant.

ID.—EVIDENCE—DECLARATION AGAINST INTEREST.—A declaration by the
owner of the land of a loss on the north boundary, and of the
change therein, owing to the street, of thirty-five feet in the location
of the north fence, was admissible as being against his interest.

ID.—DECLARATION OF DEFENDANT AS PURCHASER FROM ADMINISTRATOR.—
The declaration of the defendant appealing, made at the time of
his purchase from the administrator of the deceased owner of the
land that he was aware of the dispute as to the location of the
north line, and that he would be satisfied to take a diminished size
of lot on that account, was admissible as being a declaration
against his interest, and also an indication of what property he
was purchasing and paying for.

APPEAL from a judgment of the Superior Court of
Tulare County and from an order denying a new trial. W.
B. Wallace, Judge.

The facts are stated in the opinion of the court.

Larkins & Feemster, for Appellant.

Edwards & Smith, for Respondents.

BURNETT, J.—The controversy is over a small strip of
land in the city of Visalia, county of Tulare. At the trial
it was stipulated "that the title to the property involved was
formerly in A. B. Atwell, a common grantor; that he owned
the property at the time of his death and that both parties
got deeds from the administrator of his estate, and that said
administrator had a right to make those deeds."

The deed to plaintiffs calls for the following tract of land:
"Beginning at the southwest corner of Block No. One of
Matthew's First Addition to the Town of Visalia, County of
Tulare, State of California, as per the official map now on
file in the office of the County Recorder of the County of
Tulare, State of California, thence running East 264 feet to
the East line of said Block; thence North 120 feet; thence
West 264 feet to the West line of said Block; thence South
120 feet to the place of beginning." The conveyance to de-
fendant contained the following description: "Beginning at
a point 120 feet North of the Southwest corner of Block No.
One of Matthew's First Addition to the Town of Visalia,
as per official map thereof on file in the office of the County
Recorder of said County; thence running East 264 feet, to

East line of said Block; thence North 74 feet more or less; thence West 264 feet to the West line of said Block; thence South 74 feet more or less to the place of beginning." As seen, defendant's land lies north of that belonging to plaintiffs and the strip in question extends across the block from east to west and is thirty-five feet in width from north to south.

The settlement of the controversy depends upon the location of the southern boundary line of said Block No. 1, it being the contention of respondents that said line is marked by a fence, which, renewed from time to time, has been on the ground for nearly fifty years. On the other hand, it is insisted by appellant that the true line is some thirty-five feet farther south, and hence the northern line of respondent's property must be located the same distance south from what they claim, leaving the disputed strip covered by appellant's deed.

The court found "that along the southerly boundary line as described in plaintiff's complaint, thereinbefore mentioned and forming the actual boundary line of said lot No 1, is a fence which bounds said block on the south, and which said fence is at the point of beginning as aforesaid and the commencement of plaintiffs' lands hereinbefore mentioned, and said fence extends along the south boundary line of said Block No. 1 the entire length of said block from west to east and forms the actual boundary line of said Block on the south." It is conceded that if this finding is supported by the evidence, then the judgment must be sustained, since the northern line of plaintiffs' land as claimed by them is only one hundred and twenty feet from this fence.

That this finding is abundantly supported does not admit of any kind of doubt. Certainly, the grantors, if owning the land, had a right to fix the boundaries of the land which they conveyed. It is quite natural that they should mark those boundaries upon the ground. This we find was done at an early date. The northern and southern boundary lines of said block No. 1 were definitely fixed and thereon fences were erected. It may be that the northern line as thus established was without the exterior limits of the property of the original owner of said lot, but, as we shall see, this cannot affect the location of the line in question here. When these lines were

first located it was undoubtedly believed that the northern line of said block corresponded with the section line. In this a mistake was made, but this mistake does not render uncertain the identity of said block. The northern fence was originally placed on this supposed line, and afterward, when the street adjacent thereto, called South street, was widened and extended farther south a distance of about thirty-five feet, the fence was moved south also correspondingly, reducing thereby to the same extent the depth of the northern segment of the block. The southern boundary line, however, as we have stated, has been identified and unquestioned for nearly fifty years. It was marked on the ground at the time of the original survey, it has ever since been recognized and acquiesced in by all parties, and it has been attested by the fence put there by the owners of the property with the intention of having said fence constitute a visible and substantial memorial of the southern extremity of the block. The finding of the court in this regard is "That said fence was built in 1860 on the south line of said Block No. 1 of Matthews First Addition; that prior to the building of said fence surveyors were on the ground and marked it off; that said fence was placed on the south boundary line of said Block No. 1 after said surveyors had surveyed the ground as aforesaid; that said fence has been maintained at the same place ever since its erection in 1860 as aforesaid."

Turning to the evidence, we find that one Mary Young testified: "I have resided in Visalia fifty-one years, and am acquainted with block No. 1, Matthews First Addition to the City of Visalia, and have been acquainted with said property ever since I can remember. I know something about a fence, on or about the south line of said block No. 1. I know only where the south line of said block No. 1 is by the fence that is there. I think said fence has been there, as well as I can remember, since 1859 or 1860. I saw the surveyors surveying there, or surveying the line of course. The fence was built shortly afterward, could not tell who built it, but I think it was built by Joshua Lewis. . . . During all these years I never heard any of the Atwells claim any of the property south of the said fence. I have always lived down near that community; so far as my knowledge the property of the Atwells as possessed by them has always been north of

said fence. All the property south of that fence was in the possession of Mr. Creighton and Mr. Griffin. . . . When that road (South street) was extended, they threw out somewhere in the neighborhood of thirty or thirty-five feet, because there were five or six rows of grape vines thrown out on the road; a strip of land about thirty or thirty-five feet wide was taken off along the north side of the piece of land the Atwells claimed inside of their fence, and they moved their fence back about thirty or thirty-five feet and that strip of land went into the street. The fence they moved back had been there about twenty-nine years, as near as I can get at it.''

A. T. Griffin also testified that no one to his knowledge, whoever owned any part of block No. 1, claimed any property south of that fence, and that ''no other boundary line was ever put there between blocks 1 and 2.''

Seth Smith, the county surveyor, testified to the establishment of the northeast corner of said block and the opening of South street, which necessitated the change of the northern boundary of the block, and that the fence was moved back accordingly.

What purported to be an official map of Matthews addition, over the objection of appellant, was received in evidence. But whether properly admitted or not is of no importance as it is too meager to throw any light upon the disputed tract. The identification of block No. 1, at least as far as the southern boundary is concerned, is made complete by the testimony to which we have already referred, and the reference to the map may be disregarded. There can be no doubt that when a conveyance was made of a strip of land beginning at the southwest corner of said lot, it was the intention of the parties, and so understood, that the western termination of said fence should be the initial point, as this fence was the established southern boundary of said lot.

In *Banks* v. *Moreno,* 39 Cal. 239, it is said: ''In grants of real estate it is not always necessary to describe it by metes and bounds, or by a reference to actual or artificial monuments, nor by courses and distances. If the tract granted have a well known name, and the boundaries of the tract known by that name are notorious and well defined, a grant of the tract by its name would doubtless convey the title to the whole. In like manner, a grant describing the tract by

reference to the known occupation of the grantor or another —or to another instrument containing a sufficient description of the premises—would be sufficient. In short, any description will suffice which identifies the land granted with such certainty that the specific parcel intended to be granted can be ascertained either by the calls of the instrument, as applied to the land, or by aid of the descriptive features of the grant. These are familiar propositions, too well known to the profession to need the citation of authorities.''

Appellant objected to the question asked of the county surveyor, ''What did Mr. Atwell say about that lost corner?'' The objection was overruled and the witness answered: ''If I recollect the exact words he said, it was about thirty-three feet north of where the true line would come.'' The evidence seems to have been brought within the rule permitting the declaration of a deceased person ''made against his interest in respect to his real property.'' It is probably true, as pointed out by appellant, that the said Atwell owned at the time a strip of land on the south side of the lot, but upon appellant's theory of this case the mistake in the location of the said section line would affect Atwell's property in the same manner as if it had been adjacent to said South street. Atwell appeared to think so, as he said ''the line should be straight and the government survey should be straight and we can straighten it now better than any other time; and it hurts me worse than anybody else.'' But the testimony could not have affected the result, as it otherwise appears clear that the mistake was made in the original survey, and as we have seen, this circumstance has really no bearing upon the conclusion of the trial court as to the identity of the southern boundary line of said lot No. 1.

The bid of appellant for the purchase of the property now owned by him, addressed to the administrator of the estate of the said A. B. Atwell, deceased, was admitted over objection. It was therein stated that ''I am aware of the fact that the north line of said property may be in dispute, but will feel myself satisfied should I get thirty-nine feet south of that certain fence which extends along the north side of what is known as the A. B. Atwell tract on which the brick building above referred to is situated.'' This was clearly admissible as an admission against interest, and as

indicative of appellant's understanding of what property he was purchasing and paying for. At the time of his bid and also, we must assume, at the time of the sale, he was satisfied with thirty-nine feet. The only surprising thing is that he was dissatisfied with the ruling of the court confining him to that tract which he purchased and paid for.

All the points made by appellant have received careful attention, but we are convinced that the decision of the lower court is correct, and the judgment and order denying the motion for a new trial are affirmed.

Hart, J., and Chipman, P. J., concurred.