[Civ. No. 7687.   Third Dist.   Aug. 17, 1950.]

J. W. NEBEL et al., Appellants, v. FRANK L. GUYER et al., Respondents.

Wm. M. Macmillan and Bertram D. Janes for Appellants.

Walter E. Hettman and Herbert Chamberlin for Respondents.

ADAMS, P. J.—Plaintiffs brought this action to compel defendants Frank L. and Emmeline Guyer to remove a building which they claimed was constructed in part on the lot of plaintiffs. They also prayed for $500 punitive damages. After trial by the court sitting without a jury, plaintiffs appealed from a judgment for defendants.

The evidence shows that defendant Flournoy owned a large lot on the north side of Main Street in Quincy, Plumas County, which was bounded on the east by Church Street. Plaintiffs were tenants of Flournoy, occupying the easterly 50 feet of his lot, measured from a fence running north and south along Church Street, and had been such tenants for about eight years, occupying a dwelling thereon. In November, 1945, they decided to purchase the property they were renting and entered into an agreement with Flournoy whereby they were to purchase same upon terms therein set forth. Not long after the agreement was had, they advised Flournoy they would like a little more land to the west of their lot; and without further compensation, Flournoy agreed to give same to them. Thereupon, plaintiffs and Flournoy measured off 66 feet west from the fence along Church Street. To mark the dividing line they cut a notch in the front fence, and on the rear fence, 125 feet back, they drove a pin.

In November, 1946, defendants Guyer purchased from Flournoy the remaining portion of Flournoy's lot, measuring 100 feet along Main Street. In arranging for the purchase, Flournoy pointed out to them the marks indicating the west line of plaintiffs' lot. Later, the Guyers constructed a medical office building on their lot, all west of the line marked as aforesaid.

Plaintiffs saw the building being constructed and made no protest; but later they had a survey of their property made and the surveyor reported that the lot sold to them extended about 3 feet into Church Street. In other words it was the surveyor's conclusion that the fence along the Church Street side of the lot was out in the street, thus including in Flournoy's property a portion of the street itself. Plaintiffs then sought to move their west line westerly to compensate for the 3 feet of the street within the fence. Assuming such

extension the surveyor testified that at the front of the property defendants' building extended 48/100ths of a foot and the eaves 1-55/100ths feet onto plaintiffs' lot, but that toward the rear of the building it did not encroach at all. The total encroachment of both building and eaves, if there was such encroachment, was but 2-03/100ths feet.

The trial court found that, in view of the line fixed by the markings made by plaintiffs and Flournoy, that line was plaintiffs' west line regardless of the developments resulting from the survey, and therefore no part of the medical building was on plaintiffs' lot. It also found that defendants had never interfered with plaintiffs' quiet and peaceable enjoyment of their property; that if any encroachment existed it was not of such a nature or extent as to occasion any damage or detriment to plaintiffs or their property; and that all the acts of defendants in the erection of their building were done in good faith and in the belief that said building was erected wholly upon their property. Furthermore the trial court took the position that even if a slight encroachment did exist, the damage to plaintiffs, if any, was too small to warrant the court in compelling the Guyers to move their building. It suggested to plaintiffs that by amendment they convert their action into one for damages actually suffered, if any, instead of asking the court to compel removal of the building; and it granted time for plaintiffs to so amend. Plaintiffs failed to amend. Appellants contend that the finding that no part of defendants' building encroaches upon plaintiffs' lot, is not sustained by the evidence. ■ A somewhat similar situation was considered by this court in *Arnold* v. *Hanson,* 91 Cal.App.2d 15 [204 P.2d 97], in which we held that where a subdivider marks corners of lots and purchasers rely upon them, such marks are monuments fixing the boundaries and prevail over a later survey. Furthermore, Flournoy did not agree to convey any specific quantity of land to plaintiffs. He wanted to and did fix the west boundary, after donating an additional 16 feet at plaintiffs' request; and plaintiffs participated in fixing that line. In *Togni* v. *Slocomb,* 12 Cal.App. 733, 735 [108 P. 723], this court said: "Certainly, the grantors, if owning the land, had a right to fix the boundaries of the land which they conveyed."

The boundary line fixed as the west line of plaintiffs' land controls over distances, since markings were made establishing the west boundary. ■ But regardless of whether or not defendants' building did slightly encroach upon plaintiffs' lot,

plaintiffs failed to show that they were damaged by the alleged encroachment. The portion of the lot which they claimed was being occupied by defendants' building had been used by plaintiffs only for the planting of flowers; and it was not alleged or shown by testimony that any of said plants even had been destroyed. In fact the testimony shows that while the building was being erected no injury to them appeared, and that it was only subsequently, when defendants removed a fence in front of their lot, that Mrs. Nebel protested that she had planted flowers in front of it to hide it and did not want them trampled upon; that defendants took down their front fence and that left plaintiffs' side open so that dogs or anyone could get in there, and as she did not want it open they put up a line fence from the back to the front walk. And plaintiff J. W. Nebel admitted that the only time he felt imposed upon was after he had the survey made. It is therefore apparent that plaintiffs, in asking for the removal of the portion of defendants' building which they claim encroaches upon their lot, are relying upon a bare legal right unsupported by any damage shown. In *Rothaermel* v. *Amerige*, 55 Cal.App. 273 [203 P. 833], the rule, since relied upon in decisions of our courts, was laid down that a mandatory injunction will not be granted at the instance of an owner to compel an adjoining owner to remove a slight encroachment where plaintiff has not suffered any damage and there exists an adequate remedy at law. The same rule was stated in *McKean* v. *Alliance Land Co.*, 200 Cal. 396, 398-399 [253 P. 134], citing the foregoing case, denying removal, and holding that even though an encroachment was found to exist, $10 was adequate to compensate plaintiffs for any damage suffered, there being no evidence that the encroachment caused any actual damage to them. In *Blackfield* v. *Thomas Allec Corp.*, 128 Cal.App. 348 [17 P.2d 165], it was held, on authority of the foregoing cases, that an injunction compelling the removal of a part of an encroaching wall, which did not actually interfere with the use of the property encroached upon, should not be compelled where such injury as occurred readily could be compensated in damages. Also see *Mertens* v. *Berendsen*, 213 Cal. 111, 115 [1 P.2d 440]; *Ukhtomski* v. *Tioga Mutual Water Co.*, 12 Cal. App.2d 726, 728 [55 P.2d 1251]; *Baldocchi* v. *Four Fifty Sutter Corp.*, 129 Cal.App. 383, 393 [18 P.2d 682]; *Morris* v. *George*, 57 Cal.App.2d 665, 679-680 [135 P.2d 195].

The rule was early recognized that where the encroachment

is slight, the cost of removal will be great and the corresponding benefit to the adjoining owner small, or compensation in damages can be had, a court will ordinarily decline to compel removal, and will leave the complaining party to his remedy at law. See 1 Corpus Juris 1209. Also see 32 Corpus Juris 77-78, where it is said that when the issuance of an injunction will cause great injury to defendant and will confer very little benefit upon complainant in comparison, it is proper to refuse an injunction, especially where the right is doubtful or where money damages will compensate plaintiff.

There is here no evidence that the salability of plaintiffs' land is in anywise affected. That the value of the portion of plaintiffs' property encroached upon, if it did so encroach, is obviously very little, since the whole 16 feet that Flournoy added to the original 50-foot lot was given to plaintiffs without payment therefor. Obviously a removal of the part of defendants' building which the claimed overlap covers would be expensive as compared to any loss sustained by plaintiffs; and no bad faith on the part of defendants was shown.

We therefore conclude that, regardless of whether or not the trial court's finding that defendants' building did not encroach upon plaintiffs' land finds support in the evidence—though we cannot say that it does not—plaintiffs' plea for removal of the building was properly denied on the ground that they could be compensated adequately for actual damage suffered, if any, and that no proper grounds for compelling a removal of defendants' building had been proven.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.