[Civ. No. 22151. Second Dist., Div. Three. Jan. 7, 1958.]

JACK STRAUSS et al., Appellants, v. MYRON S. KUNIN, Respondent.

William K. Young for Appellants.

Gray, Binkley & Pfaelzer, William P. Gray and Orville A. Armstrong, Jr., for Respondent.

WOOD (Parker), J.—The first five causes of action, alleged in the complaint, were for damages resulting from the flow of water, dirt, and debris from defendant's property onto plaintiffs' property. After a partial trial those causes of action were dismissed, and the trial proceeded upon the sixth cause of action. By that cause of action plaintiffs sought (1) to enjoin defendant from discharging water from a pipeline into a public street; (2) to compel defendant to remove the portion of the pipeline which extends under and across two or three feet of plaintiffs' land; (3) for damages for trespass in installing and maintaining the portion of the pipeline on plaintiffs' land; and (4) for punitive damages. Plaintiffs appeal from the judgment in favor of defendant.

Appellants contend that certain findings are not supported by the evidence; and that, under evidence which was uncontradicted, judgment should have been in their favor.

Plaintiffs own a residential lot which is at the upper end of Dolcedo Way in the foothills of the Santa Monica Mountains. Defendant owns a residential lot which adjoins plaintiffs' lot. Since the issue herein relates to the drainage of water from defendant's lot into Dolcedo Way, it is necessary to state details with reference to the location of the lots and the driveways thereon.

Stone Canyon Road extends in a northerly and southerly direction along the bottom of Stone Canyon which is in the Santa Monica Mountains. Dolcedo Way, in the city of Los Angeles, adjoins the east side of Stone Canyon Road and extends in an easterly direction upward into the foothills of the mountains. At the upper end of Dolcedo Way there is a "turn-around circle" which is 75 feet in diameter. Plaintiffs' lot is at the southerly part of the turn-around circle. Defendant's lot adjoins and is east of plaintiffs' lot.

The entrance to plaintiffs' driveway is at the turn-around circle. The driveway, which slopes upward, extends about 175 feet along, and about 15 feet from, the boundary line between

the lots, and at the point about 175 feet from the entrance the driveway curves to the right and then to the left and continues upward to a level area where plaintiffs' residence is located.

The entrance to defendant's driveway, which is also at the turn-around circle, is about 35 feet east of, and a few feet higher than, the entrance to plaintiffs' driveway. Defendant's driveway slopes upward, and at a point about 175 feet from the entrance the driveway curves to the right and continues for approximately 100 feet to a level area where defendant's residence is located.

The level area where defendant's house is located is about 60 feet higher than the entrance to defendant's driveway. Pictures, received in evidence, indicate that the level area where plaintiffs' house is located is higher than the level area where defendant's house is located. The portion of plaintiffs' driveway, which extends about 175 feet from the driveway entrance, is about 45 feet lower than said level area of defendant's land, and the distance from that portion of the driveway to said level area (along the slope or incline) is about 55 feet.

The terrain beyond the level area of defendant's land slopes upward to the summit of the foothills, which summit is about 300 feet higher than the level area.

In the center of the turn-around circle on Dolcedo Way there is an "island" or circular plot of ground, 20 feet in diameter. A cement curb, about 8 inches in height, is around the plot, and an electrolier is in the center. Geraniums, which are in the plot, were planted by defendant and are maintained by him.

Boundary lines of the various lots at the turn-around circle on Dolcedo Way extend into the turn-around circle and meet at a point in the center of the island or circular plot in the turn-around circle. In other words, the owner of each lot owns a triangular or "pie-shaped" segment of the island or plot lying within the angle formed by the boundary lines of his lot, which lines come to a point in the center of the island or plot. The island or plot is subject to a perpetual private way and easement for road purposes, together with the right to dedicate the easement for public use for road purposes.

Dolcedo Way is a paved street, 25 feet wide. The surface of the street slopes from the sides of the street to the center where there is a shallow depression or trough. There are no gutters at the sides. Water falling upon or emptying into the street runs down the center of the street.

In 1952 heavy rains caused considerable damage to defendant's property and caused water, dirt, and debris to flow from defendant's property onto plaintiffs' driveway. Thereafter, in 1952, defendant installed on his property a drainage system which consists of catch basins, a dam, settling basin, pit, a berm along the level area of his land above plaintiffs' driveway, and underground pipelines which connect those facilities with a main 10-inch pipeline which is 2 feet under the surface of defendant's driveway and which extends the length of his driveway. Defendant extended that pipeline, under the surface, beyond the driveway entrance and across the upper part of the turn-around circle and across the easterly portion of the island to an outlet on the opposite or downhill side of the island, where water from the pipeline is discharged into the depression in the middle of Dolcedo Way. A portion of the island through which the pipeline extended was the triangular or ''pie-shaped'' part of plaintiffs' lot which, as above stated, was a part of the island. The pipeline crossed near the apex of the triangular or ''pie-shaped'' part of plaintiffs' lot, where the distance across that part was 2 or 3 feet.

There was evidence on behalf of defendant that when defendant purchased his lot in 1948 water was seeping from the ground in the middle of the roadway that was then located where his driveway is now located; from 1949, when he paved the roadway, until 1952, when the drainage system was installed, water seeped through the pavement and frequently ran down the driveway to the turn-around circle; such seeping eventually broke and destroyed the pavement; before the system was installed there was slime on Dolcedo Way; after the system was installed, defendant repaved the driveway; the natural course of part of the water draining from defendant's property is the defendant's driveway to Dolcedo Way, and the natural course for the remainder of the water is plaintiffs' driveway to Dolcedo Way (the berm which defendant placed on his land above plaintiffs' driveway prevented the flow of water onto plaintiffs' driveway) ; after the drainage system was installed there was a little more water on Dolcedo Way than there was previously ; on the day of the trial the flow of water from the pipeline into the street ''was very thin, practically a film.''

There was evidence on behalf of plaintiffs that before the system was installed water did not run down Dolcedo Way beyond the circle (except after a rain) ; after the system was

installed there has been a constant flow of water in varying quantities from the pipeline and there has been an increasing amount of algae or slime on Dolcedo Way; the algae have gradually extended about half way down Dolcedo Way; the algae create a slippery area, about a foot wide, in the center of the street where it is difficult to get traction with an automobile.

Plaintiffs alleged in their sixth cause of action (upon which the trial was had) that Dolcedo Way has frequently become wet, slippery and slimy from the discharge of water from the pipeline; such condition has impaired the use of the roadway by plaintiffs "in operating their automobiles" thereon and has "contributed to the slipping of pedestrians" who use the roadway in going to and from plaintiffs' residence; the water on Dolcedo Way is unsightly and the obnoxious odors therefrom are detrimental to health; such condition is a nuisance; the acts of defendant in installing and maintaining the pipeline on plaintiffs' property were wilful, malicious, and without plaintiffs' consent, and damaged plaintiffs in the amount of $5,000.

The court found, as follows: The natural course of water draining from the hills above defendant's property is across defendant's property, and the water is canalized into a natural channel which extends along defendant's driveway to Dolcedo Way. The natural course of water draining from most of defendant's property is defendant's driveway and Dolcedo Way to the floor of Stone Canyon. The natural course of the remainder of the water from defendant's land is plaintiffs' driveway to Dolcedo Way. The natural course of substantially all surface water draining across and from defendant's property would be the channel formed by Dolcedo Way. Prior to September, 1952, underground waters from defendant's land, and from the hills above his land, came naturally and almost constantly to the surface along the natural channel formed by defendant's driveway and Dolcedo Way. The water so coming to the surface sometimes seeped and sometimes percolated and flowed. The drainage system installed by defendant was reasonably designed to conduct surface waters from defendant's land in substantially the same course and quantity as the water would flow above the ground, except that defendant deflected into the drainage system, by means of a berm, most of the water which otherwise would have run onto plaintiffs' driveway. Water emptying into Dolcedo Way runs down a depression or trough in the center of the street.

In the trough, there is an almost constant flow of water which comes principally from the drainage system on defendant's property. Dolcedo Way was built along the natural course of water which drains from defendant's land. Due to the manner of construction of Dolcedo Way, the constant flow of water in the middle of Dolcedo Way creates an inconvenience or hazard which would not be present if the street had normal gutters at the sides. The defendant, by directing the percolating ground water into the drainage pipe (under his driveway), did not change the direction of the natural flow of the water and did not increase the quantity or rate of flow more than reasonably necessary in order to drain his land of such water and thus make reasonable use of the land. The defendant, by extending the pipe under the island in the turn-around circle, caused the pipe to traverse not more than 2 or 3 feet across the apex of the triangular part of the island owned by plaintiffs. That technical trespass resulted in no actual damage to the plaintiffs, and the continuation of the pipeline to the island served to keep the discharged water away from the entrance to the plaintiffs' driveway and was of actual benefit to plaintiffs. The court also found that all allegations of the sixth cause of action which are inconsistent with the "foregoing" findings are untrue.

Appellants contend that certain findings are not supported by the evidence. Those findings were to the effect (1) that the natural course of the water from the hills above defendant's property is across his property into a natural channel which is along defendant's driveway to Dolcedo Way; (2) that the natural course of water from most of defendant's land is his driveway and Dolcedo Way to the floor of Stone Canyon; (3) that the natural course of the remainder of the water from defendant's land is plaintiffs' driveway to Dolcedo Way; (4) that the natural course of substantially all surface water draining across and from defendant's property would be the channel formed by Dolcedo Way. Appellants' argument is that the testimony, upon which those findings are based, was given by witnesses who were not qualified to give opinion testimony on the subject of the natural course of the water. The witnesses referred to were Mr. Kurzan, an architect, and Mr. Galat, a civil engineer. Appellants assert that a proper foundation for the opinions on that subject was not laid in that there was no showing that those witnesses posssessed a knowledge of geology. Mr. Kurzan testified that he had had experience in considering drainage of storm water;

he had arranged and supervised the installation of the drainage system on defendant's property; he visited defendant's property on a number of occasions before the system was installed. Mr. Galat testified that he is employed as a storm drain engineer by the Department of Public Works of the City of Los Angeles; his duties include the investigation of all drainage problems in the West Los Angeles area, and the design of drainage structures in connection with street drainage; he observed Dolcedo Way on a number of occasions, including the day of the trial. █ "The qualification of a witness to testify as an expert is a matter within the sound discretion of the trial court, and where there is no showing of a manifest abuse of such discretion the ruling of that court will not be disturbed upon appeal." (*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 714 [242 P. 703].) █ "[T]he determinative test as to whether the trial court properly exercised its discretion is whether the witness disclosed sufficient knowledge of the subject to entitle his opinion" to be considered by the trier of the facts. (See *Valdez* v. *Percy*, 35 Cal.App.2d 485, 492 [96 P.2d 142].) █ The trial judge did not err in ruling that the witnesses were qualified to give opinion testimony upon the subject of the natural course of the water. The findings, referred to in this paragraph, are supported by the evidence.

█ Appellants also contend that there is no evidentiary support for the finding to the effect that the defendant, by directing the percolating ground water into the drainage pipe, did not change the direction of the natural flow of the water and did not increase the quantity or rate of flow more than reasonably necessary in order to drain his land and make reasonable use of the land. Appellants argue that part of the flow of water, of which they complain, arose from activation of a dormant subterranean condition when the pipeline was installed under the driveway, and thereby still water was changed to flowing water through a pipeline with the resultant discharge of more water onto Dolcedo Way. There was testimony on behalf of defendant that, before the pipeline was installed, percolating water entered the driveway and frequently ran down the driveway to the circle; and that such water eventually broke and destroyed the driveway pavement. Also there was evidence that the berm which defendant placed on his land above plaintiffs' driveway prevented the flow of water onto plaintiffs' driveway and diverted the water to defendant's pipeline; that if the water had not been

so diverted it would, in its natural course, run down plaintiffs' driveway to the same point, Dolcedo Way; and that after the pipeline was installed there was a little more water on Dolcedo Way than there was previously. The evidence was sufficient to support said finding.

Appellants contend that the water which was upon Dolcedo Way after the installation of the pipeline was a nuisance which was unlawfully created by defendant. In view of the findings regarding the natural course of the water, it is not necessary to quote and discuss certain code sections cited by appellants. Those sections are: Section 3479 of the Civil Code (which states that anything which unlawfully obstructs the free use of a street is a nuisance); section 1487 of the Streets and Highways Code (which fixes a penalty for diverting a watercourse into a highway); and subdivision (3) of subsection (b) of section 725 of the Streets and Highways Code (which states that it is unlawful to obstruct a natural watercourse so as to interfere with public travel). The question as to the natural flow of the water was a question of fact for the determination of the trial judge. The judge viewed the premises. In addition to the findings regarding the natural flow of the water, the court found that the inconvenience or hazard resulting from the flow of water in the middle of Dolcedo Way was caused by the manner in which the street was constructed (a depression or trough in the middle thereof), and such inconvenience or hazard would not be present if the street had gutters at the sides.

Appellants contend that the court should have enjoined defendant from maintaining the pipeline across appellants' property which was in the island in the center of the turn-around circle. Their argument is that it was established that appellants own a fractional part of the island and that the pipeline was installed by defendant across that fractional part without appellants' consent. The court found that the defendant, "instead of terminating the pipe at the edge of his property and debouching the water across the wide surface of the 'turn around' circle, continued the pipe under the street to the circular 'island' and under the 'island' to the downhill edge thereof, where the pipe empties directly into the trough" in the middle of Dolcedo Way; that plaintiffs hold title to a triangular fractional share of the island, which island is subject to a perpetual private way for road purposes, with the right to dedicate the easement to public use for road purposes; that the technical trespass of extending the

pipe two or three feet across the apex of the triangle resulted in no damage to plaintiffs but it served to keep the discharged water away from the entrance to plaintiffs' driveway and was of benefit to them. Plaintiffs knew of the installation of the pipe across the island at the time the pipe was installed (in 1952), but they did not object thereto until two years later (May, 1954). In June, 1954, this action was commenced. In October, 1954, plaintiffs broke the pipe at a point on the land owned by them and they filled the pipe with cement. Defendant repaired the pipe the next day. ▪ Whether the plaintiffs were damaged was a question of fact for the determination of the trial judge. At the trial, plaintiff Mr. Strauss testified, in answer to a question by the judge, that the only damage, basically, was the inconvenience caused by the water on Dolcedo Way. Plaintiffs stated at the trial that they were not seeking any pecuniary recovery. In *Nebel* v. *Guyer*, 99 Cal.App.2d 30 [221 P.2d 337], the plaintiffs sought to compel defendants to remove a building, a small portion of which was on plaintiffs' land. It was said therein (p. 33) that it was "apparent that plaintiffs, in asking for the removal of the portion of defendants' building which they claim encroaches upon their lot, are relying upon a bare legal right unsupported by any damage shown." It was also said therein (pp. 33 and 34) : "The rule was early recognized that where the encroachment is slight, the cost of removal will be great and the corresponding benefit to the adjoining owner small, or compensation in damages can be had, a court will ordinarily decline to compel removal, and will leave the complaining party to his remedy at law." Under the circumstances in the present case equity did not require that injunctive relief be granted. Appellants argue further to the effect that even if there was no damage they were entitled to an injunction because the trespass was not an innocent one but was wilful. Whether the trespass was wilful was a question of fact for the trial judge. There was no specific finding regarding wilfulness. There was a finding that all allegations of the sixth cause of action that are inconsistent with the "foregoing" (specific) findings are not true. All intendments are in favor of the judgment. It cannot be said that the trial judge abused his discretion in not granting the injunction.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.